THE LIVERPOOL, LONDON & GLOBE INSURANCE COMPANY, *a Corporation,* v. THE T. M. RICHARDSON LUMBER COMPANY, *a Corporation.*

(Filed July 17, 1902.)

1. PAROL EVIDENCE—Inadmissible, When. It is a fundamental rule of the law that parol, contemporaneous evidence is inadmissible to contradict or vary the terms of a valid written instrument.

2. CONTRACT—Implications of. When parties have deliberately entered into a written contract in such terms as import a legal obligation, without any uncertainty as to the object or intention of such transaction, it is conclusively presumed that the whole transaction of the parties, and the extent and manner of their undertaking, was reduced to writing; and all oral testimony of previous negotiations or statements between the parties, or contemporaneous therewith, are merged in the written instrument, in the absence of fraud or mutual mistake of facts, and this principle is applicable to contracts of insurance.

3. SAME—Parol Evidence. That a contract in writing, if its terms are free from doubt or ambiguity, must be permitted to speak for itself, and cannot by the courts, at the instance of one of the parties, be altered or contradicted by parol evidence, unless in case of fraud or mutual mistake of facts, and this principle is applicable to contracts of insurance.

4. INSURANCE POLICY—Reasonable Stipulations. A stipulation in an insurance policy which reads: "Warranted by the assured that a clear space of 200 feet, tramways excepted, shall always be maintained between the lumber hereby insured and any mill or other manufacturing establishment, or else this policy shall be void," is a reasonable and competent provision to insert or attach to the policy.

5. SAME. It is reasonable and competent for insurance companies to provide in their policies that no officer, agent or other representative of the company shall have the power to waive such stipulation of warranty, unless endorsed thereon or added thereto.

6. SAME—Power of Officers. Where an insurance policy contains such a stipulation of warranty, and provides that no officer, agent

or other representative of the company shall have the power to waive any condition or provision of the policy, unless such waiver shall be written upon or attached thereto, such limited grant of authority is the measure of their power.

7. SAME—Presumption. Where such limitation is expressed in the policy the assured is presumed to have notice and knowledge of such limitation, and is limited thereby.

8. SAME—Waiver of Stipulation. Where the waiver relied on is the act of an agent of the insurance company, it must be shown that the agent had express authority from the company to make the waiver, or that the company subsequently, with knowledge of the facts, ratified the unauthorized action of the agent.

(Syllabus bv the Court.)

*Error from the District Court of Oklahoma County; before B. F. Burwell, Trial Judge.*

*Stewart & Gordon* and *John W. Shartel*, for plaintiff in error.

*Howard & Ames*, for defendant in error.

On rehearing.   Reversed and remanded.

### STATEMENT OF FACTS.

This was an action brought by the T. M. Richardson Lumber company against The Liverpool, London and Globe Insurance company, to recover upon a fire insurance policy issued on December 7, 1896, for loss occasioned by fire June 12, 1897.   In order that the important questions presented in this case may be better understood in the application and discussion of the opinion, we deem it proper to fully define the issues upon which the case was tried.   The material averments in the petition are as follows:

"That the defendant, The Liverpool, London and Globe insurance company, is a foreign corporation, duly incorpor-

ated and doing a general fire insurance business in the Territory of Oklahoma, and having a local office at Oklahoma City, Oklahoma county, Territory of Oklahoma.

"That on the 7th day of December, 1896, for a valuable consideration, the defendant, the said The Liverpool, London and Globe insurance company, entered into a contract, whereby it undertook to insure and did insure the plaintiff from all direct loss or damage by fire for a period of one year, extending and continuing from twelve o'clock noon of December 7th, 1896, to and until twelve o'clock noon December 7th, 1897, to an amount not exceeding twelve hundred dollars, ($1,200), on its certain stock of lumber, lath, shingles, posts, pickets, sash and doors, while contained in the sheds and yard situated on the north side of the C. O. & G. railroad in the town of Red Oak, I. T.

"That a copy of said contract of insurance, made, executed and delivered by the defendant to the plaintiff as aforesaid, is hereto attached, marked exhibit 'A,' and made a part of this petition.

"That on the 12th day of June, 1897, a fire occurred at plaintiff's yard in Red Oak, I .T., .and entirely consumed the property contained in said yard and shed, and described in the contract of insurance aforesaid. That the value of said property at the time of said fire was the sum of one thousand dollars; that the same was totally destroyed thereby to the plaintiff's loss in the sum of one thousand dollars, ($1,000).

"That the defendant was promptly notified of the fire, and of the loss occurring thereby, and within sixty days after the date of said fire 'proof of loss' was made out as stipulated in said policy, and delivered to the defendant's agent at Oklahoma City.

"That the plaintiff has done and performed each and every condition on its part as stipulated in said contract.

"That the defendant has failed and neglected to adjust or pay the loss accruing to the defendant by reason of said fire, and as it agreed to do in said contract of insurance, to plaintiff's damage in the sum of one thousand dollars."

The defendant's answer to the petition consisted of a general denial. Thereupon the plaintiff, by leave of court, filed the following amended petition:

"Comes now the said plaintiff and with leave of court first had complains of said defendant, for that:

"1.   The plaintiff is a corporation duly organized and existing under the laws of said Territory.

"2.   The defendant is a corporation duly organized and existing under the laws of——————————, but at all times herein mentioned has been and is doing business as an insurer of property against loss by fire in the Indian Territory and the Territory of Oklahoma, and maintaining an office and agent at Oklahoma City, said county.

"3.   On December 7, 1896, the plaintiff being the owner of and having an insurable interest in a certain stock of lumber, lath, shingles, posts, pickets, sash and doors, contained in sheds and yard situated on the north side of the Choctaw, Oklahoma and Gulf railroad, in the town of Red Oak in the Indian Territory, the plaintiff and defendant entered into a certain contract in writing, the same being upon a valuable consideration duly paid by plaintiff to defendant, commonly called a policy of insurance, a true copy of which is attached to the original petition herein, marked exhibit 'A,' which is hereby made a part hereof, whereby the defendant insured the plaintiff against all direct loss or damage by fire on said property while located as therein set forth for a term of one year from December 7, 1896, at noon, to December 7, 1897, at noon, in the sum of $1,200: and the said contract was made and policy issued at said Oklahoma City.

"4.   On June 12, 1897, and while the plaintiff was still the owner and in the possession and occupancy of said property, and while the same was located in the said yard and sheds, a fire occurred therein, whereby the same was wholly consumed and destroyed, the value of the same at that time being $1,000, and consisting of 125,000 feet of dressed and undressed lumber, whereby by direct loss from such fire the plaintiff was injured and damaged in said sum of $1,000.

"5.   Immediately after such fire the plaintiff duly notified the defendant of such loss in writing, and within less than sixty days after such loss the plaintiff rendered a statement to defendant, duly signed and sworn to by plaintiff's officer and agent, stating the knowledge and belief of plaintiff as to the time and origin of said fire, and the interest of the insured and of all others therein, and the other matters and things required by the terms of said policy, which statement of proof of loss was duly delivered to and received by said defendant and retained by it without objection thereto, nor was an appraisement or any further statement required by it in accordance with the terms of said policy.

"6.   The plaintiff in all things has done and performed the acts and things required of it by the terms of said policy, and attended to all requirements of defendant made in accordance therewith, except in this, that to said policy of insurance is attached a certain condition entitled 'Lumber Space Clause' in these words, to-wit: 'Warranted by the assured that a clear space of 200 feet, tramways excepted, shall always be maintained between the lumber hereby insured and any mill or other manufacturing establishment, or else this policy shall be void,' but plaintiff says that immediately prior to the making of said contract of insurance the agents of the defendant, duly authorized to do so, made personal examination of the property covered by said policy, and its situation, well knowing that such clear space did

not exist and would not be made, and prior to and at the time of entering into said contract and issuing said policy, waived said condition and agreed to accept such risk as attended said contract, with said property, its location and situation unchanged in every particular; but defendant has neglected and refused to adjust, settle or pay said damage and loss, although demand therefor has been made.

"Wherefore, the plaintiff prays judgment for the sum of one thousand dollars, ($1,000); interest thereon from June 12, 1897, at 7 per cent per annum, and costs of suit."

And thereupon the defendant filed the following answer:

"Now comes the defendant in the above cause and denies each and all the allegations in plaintiff's petition.

"For further answer herein defendant says that it did not at any time, through any of its agents, when the policy sued on in this action was written and issued, or prior thereto, agree to insure any of the lumber for which suit is brought herein; that the lumber burned was situated in a mill belonging to the plaintiff and under the same roof with said mill, and the agents of defendant did not agree at any time to insure the lumber in said mill nor in any sheds adjoining the same, but covered lumber in yard only and such sheds as were not within prohibited space hereafter mentioned.

"Defendant further says that under and by virtue of a clause known in said policy as a 'lumber space' clause which was a warranty on the part of the assured, the assured warranted that a continuous clear space of two hundred feet should always be maintained between the lumber insured and any mill or other manufacturing establishment, else the policy should be void; that this lumber space clause aforesaid was inserted in and pasted on the face of the

policy sued on this cause, and the assured accepted said policy with said lumber space clause in the same, and knew that it existed as a part of said policy. Defendant says that notwithstanding said clear space clause, plaintiff did not maintain a space of two hundred feet between the lumber which was burned and its manufacturing establishment, which consisted of planing mill and saw mill, and the same being operated at the time by the plaintiff for the purpose of manufacturing and planing lumber. The defendant says that the agents of the defendant company had no authority to issue policies of insurance on lumber without inserting said clear space clause, and were specially prohibited by said company from doing so. That by the terms of the policy of insurance sued on in this case the agents of the defendant are prohibited from waiving any clause or provision which amounts to warranty and which, if not observed, would render the policy void. The defendant further says that if any agreement was made between any of its agents and the plaintiff whereby the lumber in question should be covered by the policy herein sued on, said agreement was merged into and destroyed by the insertion of said clear space clause in said policy; because, defendant says that all the lumber burned and for which suit is brought herein, was within the prohibited limits of said lumber space clause and was not two hundred feet from the mill.

"Wherefore, defendant prays to be dismissed without day, and have judgment for its costs."

To this answer the plaintiff filed a reply consisting of a general denial. Upon the issues thus framed the cause was tried by the court, a jury having been waived, upon the following agreed statement of facts:

"It is agreed by and between the attorneys for the plaintiff and defendant in this cause that the case shall be tried, heard and determined upon the following agreed statement of facts:

"It is agreed that D. C. Richardson, if present, would testify as follows:

"He is an interested party, a stockholder in the plaintiff company; its manager; was such when the policy sued on was written; had charge of the business at Red Oak, where the property destroyed was situated when destroyed. W. H. Ebey was local agent of defendant at Oklahoma City; that the witness, Van Valkenberg, was and is state agent and adjuster for defendant; that the said Ebey applied to witness to provide insurance for plaintiff; that witness informed him he could do so if he wished, but that plaintiff would make no written application for such insurance; that said Van Valkenberg and Ebey went to Red Oak for the purpose of examining the situation of the property and deciding whether to write policies thereon; that afterward said Ebey wrote and delivered the policy sued on in this action; that the same is for the amount and on the property requested by witness of said Ebey. That the sheds mentioned in said policy were the only sheds plaintiff had at that place at the time the property was examined by said agents and said policy written; that witness had no notice whatever of want of authority on the part of said Ebey to write said policy or to insure the property therein described until after the same was destroyed by fire; that plaintiff had no such notice; that plaintiff believed said policy to be valid and relied on it as such and relied upon and believed in the authority of said Ebey to make such contract of insurance.

"That he would further testify that no policy of insurance had been written on any of the property of the plaintiff at Red Oak since the sheds were built, and that he especially desired insurance on the lumber therein, and requested the said Ebey to write such insurance in the amount mentioned in said policy, as at that time the same was not covered by insurance; that the property described in said policy was destroyed, as alleged in the amended petition, at the time named, and was of the value claimed, and proof of loss and

demand for payment were made as required by said policy. That Ebey and Van Valkenburg were fully acquainted with the location of all of the property of plaintiff at Red Oak when said policy was written, and there was no agreement or understanding that any change should be made therein, and that the plaintiff did not then intend to make any change, and was not requested to do so by said agents of defendant, but plaintiff requested said insurance upon the same as it then was and such examination was made for the purpose of determining whether the same would be written, and after such examination the said policy was written and delivered to plaintiff without any further conversation, understanding or agreement whatever, and from that time was relied upon as a valid insurance of the property insured, and no other insurance was taken thereon."

"M. W. Van Valkenburg, if present, would testify as follows:

"I am state agent for the Liverpool, London & Globe insurance company; my territory is Kansas, Indian Territory and Oklahoma. I went to Red Oak with W. H. Ebey to look at the lumber in the yards of the Richardson lumber company for the purpose of insurance. When I examined the same I authorized insurance on the lumber in the yard but not in the sheds adjoining the mill. At the time my company was not seeking insurance on mills and lumber or fixtures in the same. Neither the mill nor the lumber in the same, or any sheds adjoining the same, was intended so far as I know to be covered by the policy sued on, and I never told Mr. Richardson, or led him to believe, that this was the fact.

"The 'clear space clause' was inserted in this policy in order to protect the company against loss or hazard by reason of the lumber being less than two hundred feet from the mill. Neither I nor Mr. Ebey was authorized by the company to waive the 'clear space clause,' the company

—38

requiring the lumber or clear space clause to be attached to all policies covering lumber. The premium charged on this mill risk was $6.60 per hundred. The premium on lumber at Red Oak, under this policy, with the clear space or lumber clause attached to the policy was $2.50 per hundred. $2.50 per hundred, in other words, was the premium charged for the insurance under this policy, and not $6.60. The sheds containing lumber at Red Oak were connected with and adjoining the mill, and there was no space whatever between the sheds and the lumber in the same and the mill. They were all under the same roof. In my authorization to Agent Ebey to write on lumber I distinctly stated that he should give the Liverpool, London & Globe no insurance on the mill or contents, for the reason that we considered said mills extremely hazardous. Had sheds been erected in the yards during the life of our policy, two hundred feet from the mill it would have covered lumber in there. I never saw the policy form until after the fire, and even if I had I never should have contemplated its covering lumber in mill or sheds attached, as the question of insuring lumber in mill or sheds attached was never mentioned. (The defendant company had no notice of any agreement to insure lumber in the mill or sheds attached, as testified to by witness, Richardson.) There was other lumber in the yard covered by this policy which was not within the prohibited space, and which constituted the principal stock."

"T. M. Upshaw, if present, would testify as follows:

"I wrote the policy in question. At the time I did so I was managing Ebey's business, and wrote the words 'lumber in sheds and yards' for the reason that I had never written a policy without covering lumber in sheds, this being in the usual form. Ebey gave me no instructions whatever as to the writing of this policy. I attached the 'clear space clause' to the policy because this clause was attached to all policies covering lumber yards. The witness, Richardson,

knew that the rate on this mill was $6.60, and that if any lumber was in the same the rate would be the same on that."

"It is further agreed the deposition of W. H. Ebey shall be read as his testimony herein.

"It is further agreed that prior to and at the time of issuing this policy sued on herein, said W. H. Ebey was the agent of the defendant with the usual powers to solicit insurance, make contracts in reference thereto, issue policies and collect premiums."

The deposition of W. H. Ebey, above referred to, is as follows:

"Interrogatory 1st: You may state your name, age, place of residence, and occupation.

"Answer to Interrogatory 1: W. H. Ebey, age 34, Terrel, Tex.

"Int. 2nd.: Where did you reside, in what business were you engaged, and what relation did you bear to the defendant, The Liverpool, London & Globe insurance company, on and prior to December 7th, 1896?

"Answer to Int. 2: Resided at Oklahoma City, O. T. Was engaged in the insurance business. Was agent for the Liverpool, London and Globe insurance company.

"Int. 3rd: Are you and were you prior to December 7, 1896, acquainted with Mr. M. W. Van Valkenberg, and did you know his business and relation, if any, he bore to the defendant insurance company?

"Answer to Int. 3rd: I knew Mr. M. W. Van Valkenburg as state special agent of the Liverpool, London & Globe insurance company.

"Int. 4. You may state whether on or about December 7, 1896, as the agent of the defendant you made or wrote, or had made or written, a contract or policy of insurance upon certain lumber, shingles, etc., for $1,200 for the plaintiff T. M. Richardson lumber company, the property being situated at Red Oak in the Indian Territory?

"Answer to Int. 4. Yes.

"Int. 5. You may state whether previous to writing said policy Mr. VanValkenburg and yourself made a visit to Red Oak; and if so, for what purpose you went there?

"Answer to Int. 5. Yes, Mr. Van Valkenburg and myself visited Red Oak, I. T., for the purpose of inspecting the T. M. Richardson lumber plant to determine whether or not Mr. Van Valkenburg would authorize me to write insurance on same.

"Int. 6. You may describe the mills and yards of plaintiff as you found them at Red Oak upon the occasion of that visit?

"Answer to Int. 6. It would be difficult for me to describe the plant with sufficient accuracy to be intelligible.

"Int. 7. How much of a clear space, if any, was there between the lumber in the yards and sheds and the mills, and how near were the yards and sheds to the mills?

"Answer to Int. 7. There was over 200 feet clear space between the mill and lumber piles, but do not remember distinctly as to sheds.

"Int. 8. You may state what conditions, if any, were attached to the taking of the risk in way of making or creating a clear space? What was said on the subject?

What decision was arrived at by you and VanValkenburg as to taking the risk as it stood or as to first requiring a change to be made in the location or situation of the mills and lumber in the yards or sheds?

"Answer to Int. 8. I will answer this question in a general way by stating that Mr. Van Valkenburg after inspecting the plant was satisfied with same, and authorized a liberal line to be written. Nothing was said to me by Mr. Van Valkenburg about changes; he was satisfied to write the risk just as it stood.

"Int. 9. You may state, if you know, whether or not the visit of yourself and Mr. Van Valkenburg to Red Oak was not to examine the situation and condition of the mills and lumber in yards and sheds for the purpose of determining whether the defendant would write the insurance on them as they stood, and whether it was decided to do so, and was done, and whether anything was said, and if so what, to any one connected with the plaintiff about making any changes before the risk would be taken, and if any conversation was had and with whom and what was it?

"Answer to Int. 9. Mr. Van Valkenburg visited Red Oak to see whether or not Mr. Van Valkenburg would authorize me to write insurance on the T. M. Richardson saw mill plant. After inspecting same, authority was given me to write. Mr. Van Valkenburg had a talk with T. M. Richardson at Red Oak, nothing was said in my presence about any changes."

The court found the issues for the plaintiff and against the defendant, and rendered judgment for the sum of $1,000 with interest and costs as prayed for in plaintiff's petition. A motion for new trial was duly filed, considered and overruled by the court. From which judgment and ruling of the court the defendant brings the case here on appeal for review.

Opinion of the court by

HAINER, J.: Briefly stated the evidence is as follows:

That W. H. Ebey was the local agent of the insurance company at Oklahoma City and N. W. Van Valkenburg was state agent or adjuster for the state of Kansas and for Oklahoma and Indian Territories; that Ebey solicited the insurance from Richardson, who was the manager of the T. M. Richardson lumber company, the defendant in error; that the insured informed him that no written application would be made, but that he could write the company a policy if he so desired; that Van Valkenburg and Ebey thereupon went to Red Oak, Indian Territory, for the purpose of examining the situation and condition of the property, to determine whether the policy should be issued. The property of the insured consisted of a stock of lumber situated in the yards and sheds of said lumber company. That Van Valkenburg informed him that he was satisfied with the risk, and authorized the local agent to write a 'liberal policy'; the policy was then written by a clerk of the local agent, and afterwards delivered to Richardson, who accepted the policy and paid the premium. It further appears that Ebey had the usual powers to solicit insurance, make contracts in reference thereto, issue policies, and collect premiums. There was no indorsement on the policy or added thereto that any of the stipulations or conditions therein contained were waived; and there was no issue tendered or evidence offered that the policy was void on the ground of fraud or mutual mistake of the parties. The policy, which is the subject of controversy in this action, contains, among other things, the following stipulation:

"Warranted by the assured that a clear space of 200 feet, tramways excepted, shall always be maintained be-

tween the lumber hereby insured and any mill or other manufacturing establishment, or else this policy shall be void."

It is a fundamental rule of law that parol testimony is admissible to contradict or vary the terms of a valid written instrument if its terms are free from doubt and ambiguity.

Greenleaf in his work on Evidence, volume 1, section 275, states the rule as follows:

"When parties have deliberately put their engagements into writing, in such terms as import a legal obligation, without any uncertainty as to the object or extent of such engagement, it is conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking was reduced to writing; and all oral testimony of previous colloquium between the parties, or of conversation or declarations at the time when it was completed or afterwards, as it would tend in many instances to substitute a new and different contract for the one which was really agreed upon, to the prejudice, possibly, of one of the parties, is rejected."

Starkie in his work on Evidence, 587, 9th Am. Ed. thus states the rule:

"It is likewise a general and most inflexible rule that wherever written instruments are appointed, either by the requirement of law, or by the compact of the parties, to be the repositories and memorials of truth, any other evidence is excluded from being used, either as a substitute for such instruments or to contradict or alter them. This is a matter both of principle and policy; of principle, because such instruments are in their nature and origin entitled to a much higher degree of credit than parol evidence; of

policy, because it would bc attended with great mischief if those instruments upon which men's rights depended were liable to be impeached by loose collateral evidence."

Section 822 of our Statutes of 1893, in relation to contracts, reads as follows:

"The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter, which preceded or accompanied the execution of the instrument."

In *New York Insurance Company v. Thomas,* 3 Johns. Cases, 1, in an action upon a policy of insurance where parol evidence was offered to vary the terms of a written instrument, Mr. Justice Kent said:

"The next point is whether the parol proof be admissible to explain the contract, and, if it be, what is the effect, in the present case, of such proof.

"I know no rule better established than that parol evidence shall not be admitted to disannul or substantially vary or extend a written agreement. The admission of such testimony would be mischievous and inconvenient. Parol evidence is to be received in the case of *ambiguitas latens,* to ascertain the identity of a person or thing, but before the parol evidence is to be recived in such case, the latent ambiguity must be made out and shown to the court. In the present instance there is no ambiguity. The language of the contract, throughout, is consistent and explicit. This general rule of law has been particularly and emphatically applied to policies. (Skinn. 54.) And except in the special instance of explanations resulting from the usage of trade, they have never been allowed to be contradicted by parol agreements."

In *Insurance Company v. Mowry,* 96 U. S. 544, 547, the policy provided that it should be void and wholly for-

feited if the premiums were not punctually paid. The agent who procured the policy agreed with the insured that the company should give notice when the premiums fell due, but this agreement was not contained in the policy. The company failed to give notice, and the insured failed to pay the premium. The agreement of the agent before the policy issued, was claimed to be an estoppel of the company against insisting upon the forfeiture of the policy. Mr. Justice Field, in delivering the opinion of the court, said:

"All previous verbal arrangements were merged in the written agreement. The understanding of the parties as to the amount of the insurance, the conditions upon which it should be payable, and the premium to be paid, was there expressed for the very purpose of avoiding any controversy or question respecting them. * * * An estoppel cannot arise from a promise as to future action with respect to a right to be acquired upon an agreement not yet made * * *. The doctrine has no place or application when the statement relates to rights depended upon contracts yet to be made, to which the person complaining is to be a party. He has it in his power in such cases, to guard in advance against any consequences of a subsequent change of intention and conduct by the person with whom he is dealing. For compliance with arrangements respecting future transactions, parties must provide by stipulations in their agreements when reduced to writing. The doctrine, carried to the extent for which the assured contends in this case, would subvert the salutary rule that the written contract must prevail over previous verbal arrangements, and open the door to all the evils which that rule was intended to prevent. (*White v. Ashton,* 51 N. Y. 280; Bigelow, Estop. 437, 441; *White v. Walker,* 31 Ill. 422; *Faxton v. Faxton,* 28 Mich. 159.)".

In *Insurance Company v. Lyman,* 15 Wall. 664, Mr. Justice Miller, in delivering the opinion of the supreme court of the United States, said:

"Undoubtedly a valid verbal contract for insurance may be made, and when it is relied on, and is unembarrassed by any written contract for the same insurance, it can be proved and become the foundation of a recovery as in all other cases where contracts may be made either by parol or in writing.

"But it is also true that when there is a written contract of insurance it must have the same effect as the adopted mode of expressing what the contract is, that it was in other classes of contract, and must have the same effect in excluding parol testimony in its application to it that other written instruments have.

"Counsel for the defendants in error here relies on two propositions, namely, that the policy, though executed January 5, is really but the expression of a verbal contract, made the the thirty-first day of December previous, and that the loss of the vessel between those two dates does not invalidate the contract, though known to the insured and kept secret from the insurers; and, secondly, that they can abandon the written contract altogether and recover on the parol contract.

"We do not think that either of these propositions is sound. Whatever may have been the precise facts concerning the negotiations for a renewal of the insurance previous to the execution of the policy, they evidently had reference to a written contract, to be made by the company. When the company came to make this instrument they were entitled to the information which the plaintiff had of the loss of the vessel. If then they had made the policy, it would have bound them, and no question could have been raised of the validity of the instrument or of fraud practiced by the insured. On the other hand, if they had refused to make a policy, no injury would have been done to the plaintiffs, and they would then have stood on their parol contract, if they had one, and did not need a policy procured by fraudulent concealment of a material fact at the time it was executed and the premium paid.

"To permit the plaintiffs, therefore, to prove by parol that the contract of insurance was actually made before the loss occurred, though executed and delivered and paid for afterward, is to contradict and vary the terms of the policy in a matter material to the contract, which we understand to be opposed to the rule on that subject in the law of Louisana as well as at the common law.

"We think it equally clear that the terms of the contract having been reduced to writing, signed by one party and accepted by the other at the time the premium of insurance was paid, neither party can abandon that instrument, as of no value in ascertaining what the contract was, and resort to the verbal negotiations which were preliminary to its execution, for that purpose. The doctrine is too well settled that all previous negotiations and verbal statements are merged and excluded when the parties assent to a written instrument as expressing the agreement."

In *Northern Assurance Company v. Grand View Building Association*, 183 U. S. 308, the supreme court of the United States in discussing this identical question, said:

"Contracts in writing, if in unambiguous terms, must be permitted to speak for themselves, and cannot, by the courts at the instance of one of the parties, be altered or contradicted by parol evidence, unless in case of fraud or mutual mistake of facts, and this principle is applicable to cases of insurance contracts."

The policy sued on in this case is plain and explicit and free from all doubt or ambiguity. There is no allegation in the petition of fraud or mistake, and none is claimed or shown. And hence parol testimony was inadmissible and incompetent to vary or change the terms or conditions of the policy, and all previous negotiations and statements between the in-

sured and assured were merged in the policy. The question then arises: Did the insurance company by the acts and conduct of its agents waive the stipulation in the policy in reference to clear space lumber clause? The policy provides the mode in which any stipulation or condition contained therein may be waived. It is as follows:

"This policy is made and accepted subject to the foregoing stipulations and conditions, together with such other provisions, agreements and conditions as may be endorsed hereon or added hereto, and no officer, agent or other representative of this company shall have power to waive any provision or condition of this policy except such as by the terms of this policy may be the subject of agreement endorsed hereon or added hereto, and as to such provisions and conditions no officer, agent or representative shall have such power or be deemed or held to have waived such provisions or conditions unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or remission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached."

In the case of *Northern Assurance Company v. Grand View Building Association*, 183 U. S. 308, the supreme court of the United States has recently construed an insurance policy containing the identical stipulations and conditions that are contained in this policy, reversing the judgment of the circuit court of appeals, decided in 101 Fed. Rep. 27, and cited by counsel for plaintiff in error in support of their contention of the cause. Mr. Justice Shiras, speaking for the supreme court of the United States, after an exhaustive and able review of the authorities, said:

"What, then, are the principles sustained by the authorities, and applicable to the case in hand?

"They may be briefly stated thus: That contracts in writing, if in unambiguous terms, must be permitted to speak for themselves, and cannot by the courts, at the instance of one of the parties, be altered or contradicted by parol evidence, unless in case of fraud or mutual mistake of facts; that this principle is applicable to cases of insurance contracts as fully as to contracts on other subjects; that provisions contained in fire insurance policies, that such a policy shall be void and of no effect if other insurance is placed on the property in other companies, without the knowledge and consent of the company, are usual and reasonable; that it is reasonable and competent for the parties to agree that such knowledge and consent shall be manifested in writing, either by endorsement upon the policy or by other writing; that it is competent and reasonable for insurance companies to make it matter of condition in their policies that their agents shall not be deemed to have authority to alter or contradict the express terms of the policies as executed and delivered; that where fire insurance policies contain provisions whereby agents may, by writing endorsed upon the policy or by writing attached thereto, express the company's assent to other insurance, such limited grant of authority is the measure of the agent's power in the matter, and where such limitation is expressed in the policy, executed and accepted, the insured is presumed, as matter of law, to be aware of such limitation; that insurance companies may waive forfeiture caused by non-observance of such conditions; that, where waiver is relied on, the plaintiff must show that the company, with knowledge of the facts that occasioned the forfeiture, dispensed with the observance of the condition; that where the waiver relied on is an act of an agent, it must be shown either that the agent had express authority from the company to make the waiver, or that the company subsequently, with knowledge of the facts, ratified the action of the agent.

"In the light of these principles," continued the learned Justice, "let us examine the contract that was made between the parties to the controversy before us. The contract was

in writing, and in clear and unambiguous terms; that contract provided that 'this entire policy, unless otherwise so provided by agreement endorsed hereon or added hereto, shall be void if the insured now has, or shall hereafter make or procure, any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy,' and that 'no officer, agent or other representative of this company shall have power to waive any provision or condition of this policy, except such as by the terms of the the policy may be the subject of agreement endorsed hereon or added hereto, and as to such provisions or conditions, no officer, agent or representative shall have power or be deemed or held to have waived such provisions or conditions, unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached.'

"Such being the contract, and the property insured having been destroyed by fire on June 1, 1898, and the insurance company having denied liability because informed that other insurance was held by the insured on the same property, without the knowledge or consent of the company, this action was brought.

"It is not pretended, as we understand the plaintiff's petition, that by any language or declaration of the agent, at the time the policy in suit was executed and accepted, he claimed to have power to waive any provision or condition of the policy, nor that the plaintiff was induced to accept the policy by any promise of the agent to procure the assent of the company to permit the outstanding insurance and to waive the condition. The plaintiff's case stands solely on the proposition that because it is alleged, and the jury have found, that the agent had notice or knowledge of the existence of insurance existing in another company at the time the policy in suit was executed and accepted, and received the premium called for in the contract, thereby

the insurance company is estopped from availing itself of the protection of the conditions contained in the policy. In other words, the contention is that an agent with no authority to dispense with or alter the conditions of the policy could confer such power upon himself by disregarding the limitations expressed in the contract, those limitations being according to all the authorities presumably known to be insured. It was not shown that the company, when it received the premium, knew of the outside insurance, nor that, when made aware of such insurance, it elected to ratify the act of its agent in accepting the premium. On the contrary, all the record discloses is that the jury found that the agent knew, when the policy in the defendant company was issued and delivered to the plaintiff, that there was then subsisting fire insurance to the amount of $1,500 in another fire insurance company, and that such knowledge had been communicated to the agent by or on behalf of the assured. There is no finding that the agent communicated to the company or to its general agent at Chicago at the time he accounted for the premium, the fact that there was existing insurance on the property, and that he had undertaken to waive the applicable condition. Indeed, it appears from the letter of defendant's manager at Chicago, to whom the proofs of loss had been sent, which letter was put in evidence by the plaintiff and is set forth in the bill of exceptions, that the additional insurance held by the plaintiff was without the knowledge or consent of the company; and it further appears, and was found by the jury, that immediately on the company's being informed of the fact, the amount of the premium was tendered by the agents of the company to the insured. So that that is not the slightest ground for claiming that the insuranace company, with knowledge of the facts, either accepted or retained the premium. The plaintiff's case, at its best, is based on the alleged fact that the agent had been informed, at the time he delivered the policy and received the premium, that there was other insurance. The only way to avoid the defense and escape from the operation of the condition. is to hold that it is not competent for fire insur-

ance companies to protect themselves by conditions of the kind contained in this policy. So to hold would, as we have seen, entirely subvert well settled principles declared in the leading English and American cases, and particularly in those of this court.

"This case is an illustration of the confusion and uncertainty which would be occasioned by permitting the introduction of parol evidence to modify written contracts, and by approving the conduct of agents and persons applying for insurance in disregarding the express limitations put upon the agents by the principal to be affected.

"It should not escape observation that preserving written contracts from change or alteration by verbal testimony of what took place prior to and at the time the parties put their agreements into that form, is for the benefit of both parties. In the present case, if the witness on whom the plaintiff relied to prove notice to the agent had died, or had forgotten the circumstances, he would thus, if he had depended to prove his contract by evidence extrinsic to the written instrument, have found himself unable to do so. So, on the other side, if the agent had died, or his memory had failed, the defendant company might have been at the mercy of unscrupulous and interested witnesses. It is not an answer to say that such difficulties attend other transactions and negotiations, for it is the knowledge of the inconveniences that attend oral evidence that has lead to the custom of putting important agreements in writing, and to the legal doctrine that protects them when so expressed, and when no fraud or mutual mistake exists, from being changed or modified by the testimony of witnesses as to conversation and negotiations that may never have taken place, or the real nature and meaning of which may have faded from recollection.

"Besides the importance of such considerations to the parties immediately concerned in business transactions, the

community at large have a deep interest in the welfare and prosperity of such beneficial institutions as fire insurance companies. It would be very unfortunate if prudent men would be deterred from investing capital in such companies by having reason to fear that conditions which have been found reasonable and necessary to put into policies to protect the companies from faithless agents and from dishonest insurers, are liable to be nullified by verdicts based on verbal testimony.

"Coming to the decisions of our state courts," says the learned justice, "we find that, while there is some contrariety of decisions, the decided weight of authority is to the effect that a policy of insurance in writing cannot be changed or altered by parol evidence of what was said prior to or at the time the insurance was effected; that a condition contained in the policy cannot be waived by an agent, unless he has express authority so to do; and then only in the mode prescribed in the policy; and that mere knowledge by the agent of an existing policy of insurance will not affect the company unless it is affirmatively shown that such knowledge was communicated to the company.

"In *Worcester Bank v. Hartford Fire Insurance Company,* 11 Cush. 265, which was a case of additional insurance, and where one Smith testified that he was agent for the defendant company to issue policies, and was in habit of receiving notices of additional insurance, which he endorsed on the policies, it was held by the supreme judicial court of Massachusetts that as it is provided in the policy on which this action is brought that if the assured or his assigns shall hereafter make any other insurance on the same property, and shall not with all reasonable diligence give notice thereof to this company, and have same endorsed on this instrument or otherwise acknowledged by them in writing, this policy shall cease and be of no further effect, and as, after the making of this policy, the assured obtained other

—39

insurance on the same property, but did not have the same endorsed on the policy or otherwise acknowledged by the defendants in writing, the policy was void, notwithstanding there was parol evidence tending to show that notice had been given to Smith, the company's agent.

"The same court held in *Hale v. Mechanic's Mutual Fire Insurance Company,* 6 Gray 169, that a policy issued by a mutual fire insurance company, whose by-laws provided that any insurance subsequently obtained without the consent in writing of their president should avoid the policy, and that the by-laws should in no case be altered except by a vote of two-thirds of the stockholders or directors, was avoided by a subsequent insurance obtained with the mere verbal consent of the president. It was said by Bigelow, J., giving the unanimous opinion of the court:

" 'Such being the rights of the parties under the contract, it is clear, upon the facts in the case, that the policy was annulled under the fifteenth article of the by-laws, by reason of the subsequent insurance procured by Stone and Pony on the property, without the assent of the president of the corporation in writing; unless the waiver of such written assent by the president, and his verbal assent to such subsequent insurance as found by the jury, operate to set aside this provision in the by-laws as to this particular policy and render the contract valid, notwithstanding by its express terms, as by the clause in the by-laws, it would be otherwise void. But the difficulty in maintaining the plaintiff's position on this part of the case is, not only that it attempts to substitute for the written agreement of the parties a verbal contract, but that there is an entire absence of any authority on the part of the president to make such waiver or give such verbal assent. He was an agent, with powers strictly defined and limited, and could not act so as to bind the defendant beyond the scope of his authority. (Story on Agency, secs. 127-133; *Salem Bank v. Gloucester Bank,* 15 Mass. 29.) By article 15 of the by-

laws, his power to assent to subsequent insurance was expressly confined to giving such assent in writing. In order to guard against the danger of over insurance, the corporation might well require that any assent to further insurance on property insured by them should be given by the deliberate and well-considered act of their president in writing, and not be left to the vagueness and uncertainty of parol proof. The whole extent and limit of the president's authority in this respect were set forth in the by-laws attached to the policy in the present case, and, as the evidence shows, were fully known to the assured. * * * If the argument of the plaintiff should be carried out to its legitimate result, it would give to the president the right, in any case, to suspend or change the by-laws by his verbal act and at his pleasure. We are therefore of the opinion that the finding of the jury does not render the policy valid; but that it was annulled by the subsequent insurance obtained by the assured without the written consent of the president.'

"In *Smith v. Niagara Fire Ins. Co.*, 60 Vermont, 682, the supreme court of Vermont, in an elaborate opinion; in *Wilson v. Ins. Co.*, 4 R. I. 141, the supreme court of Rhode Island, and in *Cleaver v. Traders' Ins. Co.*, 65 Mich. 527, and same case in 71 Michigan, 414, the supreme court of Michigan; held, that the fact that the company's agent had authority, in a certain way or manner, to consent to the taking of additional insurance, does not aid the plaintiff; that the agent did not consent, in the cases cited, within the line of his authority or in the manner prescribed by the policy, wherein the agent is expressly prohibited from waiving or modifying the written contract.

"The same view of the law prevails in Connecticut. In *Sheldon v. Hartford Fire Insurance Company*, 22 Conn. 235, it was held that where the policy and survey constituted a contract between the parties and there was no imperfection or ambiguity in the contract, evidence of parol representations made to the agent prior to the issuing of the policy could not be received to explain or qualify the

contract. See, also, *Glendale Man. Co. v. Protection Ins. Co.,* 21 Conn. 19, 37; *Hough v. City Fire Ins. Co.,* 29 Conn. 10.

"*Jennings v. Chenango Mut. Ins. Co.,* 2 Denio, 75, has long been a leading case. There it was held that the conditions of insurance containing statements of the purpose for which the property insured is to be occupied, and of its situation as to other buildings, are warranties, and if untrue the policy is void, though the variance be not material to the risk; and that parol evidence that the insured truly informed the agent of the insurer who prepared the application as to these particulars is not admissible. In the opinion, the language of Parker, C. J., in *Higginson v. Dall,* 13 Mass. 96, is quoted that 'policies, though not under seal, have nevertheless ever been deemed instruments of a solemn nature and subject to most of the rules of evidence which govern in the case of specialties. The policy is itself considered to be the contract between the parties, and whatever proposals are made or conversation had prior to the subscription, they are considered as waived, if not inserted in the policy, or contained in a memorandum annexed to it.'

"In *Fowler v. Metropolitan Ins. Co.,* 116 N. Y. 389, it was said: 'A long line of authorities has settled the law to be that when it is expressly provided that the premium on a life insurance policy shall be paid on or before a certain day, and in default thereof the policy shall be void, the non-payment of the premium upon the day named works a forfeiture * * * The claim that such a provision, in a paid up policy, is unconscionable and oppressive, and presents a case in which a court of equity should relieve from the forfeiture incurred by omission to make prompt payment of premiums, is not a new one. It has frequently been presented to the courts and has received very full consideration in this court in *Attorney-General v. North American Life Insurance Co.,* 82 N. Y. 172, and in *People v. Knickerbocker Life Ins. Co.* It was decided in those cases that provisions in paid up policies, issued in lieu of other policies on which notes had been given for premiums,

that they should be void in case the interest on such notes was not paid, are not unconscionable, oppressive or usurious. In the first case cited, Judge Earl said: 'There are doubtless some decided cases which hold that such forfeiture should not be enforced, but I think the better rule is to uphold and enforce such contracts when free from fraud or mistake, just as the parties have made them.' And in *Douglass v. Knickerbocker L. Ins. Co.*, 83 N. Y. 492, it was said: 'It has generally been found most conducive to the general welfare to leave parties to make their own contracts, and then enforce them as made, unless, on the ground of fraud, accident or mistake, ignorance, impossibility or necessity, relief can be granted against them.' * * * It would be impossible to sustain the claim that the statements and representations contained in the pamphlet issued by the company were to be regarded as affecting or modifying the strict terms of the policy without disregarding the established rule of law that a written contract merges all prior and contemporaneous negotiations in reference to the same subject, and that the whole engagement of the parties and the extent and manner of their undertaking are embraced in the writing. This rule is the same in equity as at common law, and although a written agreement may be set aside or reformed, fraud or mistake must be shown to entitle a party to such relief. And it is never competent in an action upon a written contract to show that it was executed on the faith of a proceeding parol stipulation not embraced in it.

"In *Baumgartel v. The Providence Washington Ins. Co.*, 136 N. Y. 547, where defendant had issued to plaintiff a policy of fire insurance which contained a clause to the effect that, unless otherwise provided by agreement endorsed thereon, it should be void in case of other insurance on the property insured; and it also provided that no agent of the company should have power to waive any provision or condition of the policy except such as by its terms might be the subject of agreement endorsed thereon or added thereto, and, as to those, that he should have no such power nor be deemed to have waived them unless in writing so endorsed

or attached; and where, in an action upon the policy, it appeared that during its life, the plaintiff without notice to the defendant and without its knowledge or consent, obtained other insurance upon the property, and that thereafter he informed the agent, who had issued the policy, of this fact, and that the agent had replied, 'All right; I will attend to it;' but it did not appear that the plaintiff then had the policy in suit with him or afterwards applied to said agent for written consent to the other insurance; it was held, that knowledge of the agent of the subsequent insurance did not satisfy the condition of the policy, and that plaintiff having failed to comply therewith, the policy was forfeited and void; and also held, that the statements of defendant's agent did not amount to a waiver of the conditions, or authorize the application of the doctrine of estoppel. It was said in the opinion: 'The stipulation with respect to further insurance is one of the conditions upon which, by the agreement of the parties, the liability of the defendant depended in the case of a loss during the term of the insurance. The parties have also agreed upon the mode in which the condition could be complied with or waived, namely, by writing endorsed upon the policy in the form of a consent to the other insurance. The agent had power to give this contract only in the manner prescribed by the contract. But there is not in the case any proof, even of verbal consent by the agent, that the plaintiff might procure further and additional insurance * * *.' The effect of such stipulation in a contract of insurance as well as the manner in which they may be modified or waived by agents of the company have been so thoroughly discussed and so clearly pointed out, that a reference to some of the more recent cases on the subject is all that is needful here. (*Allen v. German Ins. Co.,* 123 N. Y. 6; *Quinlan v. Providence W. Ins. Co.* 133 *Id.* 356; *Messelback v. Norman,* 122 *Id.* 583; *Walsh v. Hartford Ins. Co.,* 73 *Id.* 583.)"

The court of appeals of the state of New York in *Wood v. American Fire Insurance Company,* 149 N. Y. 382, 44 N. E. 81, in a late case held that:

"The restriction inserted in the contract upon the power of the agent to waive any condition, unless done in a particular manner, cannot be deemed to apply to those conditions which relate to the inception of the contract, when it appears that the agent has delivered it, and received the premiums, with full knowledge of the actual situation. To take the benefit of a contract, with full knowledge of all the facts, and attempt afterward to defeat it, when called upon to perform, by asserting conditions relating to those facts, would be to claim that no contract was made, and thus operate as a fraud upon the other party."

And the same rule was announced by the court of appeals of New York in the case of *Robbins v. Springfield Fire and Marine Insurance Company,* 149 N. Y. 382, 44 N. E. 159; and a number of other states have announced practically the same rule. Mr. Justice Shiras, in discussing the rule laid down by the later New York cases, uses the following language:

"It is doubtless true that in several later cases the New York court of appeals seems to have departed from the principles of the previous cases, and to have held that the restrictions inserted in the contract upon the power of an agent to waive any condition, unless done in a particular manner, cannot be deemed to apply to those conditions which relate to the inception of the contract when it appears that the agent has delivered it and received the premiums, with full knowledge of the actual situation. To take the benefit of a contract with full knowledge of all the facts and attempt afterwards to defeat it, when called upon to perform, by asserting conditions relating to those facts, would be to claim that no contract was made, and thus operate as a fraud upon the other party. (*Robbins v. Springfield Fire Ins. Co.,* 149 N. Y. 484; *Wood v. American Fire Ins. Co.,* 149 N. Y. 382. But see *Rehrback v. German Fire Ins. Co.,* 62 N. Y. 63, and *Owens v. Holland Ins. Co.,* which are irreconcilable.)

"The fallacy of this view," says Justice Shiras, "is disclosed in the phrases we have italicized. It was thereby assumed that the agent had full knowledge of all the facts, that such knowledge must be deemed to have been disclosed by the agent to his principal, and that, consequently, it would operate as a fraud upon the assured to plead a breach of the conditions. This mode of reasoning overlooks both the general principle that a written contract cannot be varied or defeated by parol evidence, and the express provision that no waiver shall be made by the agent except in writing endorsed on the policy. As we shall hereafter show when we come to consider the meaning and legal purport of the contract in suit, such express provision was intended to protect both parties from the dangers involved in disregarding the rule of evidence. The mischief is the same whether the condition turned upon facts existing at and before the time when the contract was made, or upon facts subsequently taking place.

"In *Franklin Fire Ins. Co. v. Martin,* 41 New Jersey Law, 568, the facts were as follows: A policy described the property insured as 'occupied as a dwelling and boarding house': in fact it was occupied as a country tavern, and there was kept for use a billiard table in a room back of the bar room. The property continued to be so used until the fire occurred. In the conditions of insurance, taverns were classified as extra hazardous, and billiard rooms were named as specially hazardous, each being subject to higher premiums than ordinarily hazardous risks. It was held by the New Jersey court of errors and appeals that evidence that the application for insurance was prepared by the agent of the insurer, and that he knew at the time of the application that the property was occupied as a tavern, and that a billiard table was kept in it for use, could not be received for the purpose of showing that, under the description of a dwelling and boarding house, the parties intended to insure the premises as they were then, in fact, being used; that a written contract of insurance cannot be altered or varied by parol evidence of what

occurred between the insured and the agent of the insurer at the time of affecting the insurance; and that such evidence will not be received to raise an estoppel *in pais,* which shall conclude the insurer from setting up the defence that the policy was forfeited by a breach of the conditions of insurance.

"In the opinion of the court, given by Judge Depue, there was a full examination of cases on the subject of the admissibility of parol evidence in actions on policies of insurance, and some of his observations are so weighty, and so applicable to the case before us, that we shall quote from them at some length:

"The leading case in New York is *Jennings v. Chenango Insurance Company,* 2 Denio, 75. This case held, in accordance with a series of cases, beginning with *Vandevoort v. Columbian Insurance Company,* 2 Caines, 155, that parol evidence that the insured truly informed the agent of the insurer, who prepared the application, as to the situation of the premises, was not competent to vary a warranty on that subject, or save the insured from the consequences of a breach of the contract of insurance. This case was recognized as good law by the courts of that state until the decision in *Plumb v. Cattaraugus Insurance Company,* 18 N. Y. 392, where such evidence was held by a divided court to be admissible, not to change the contract, but to produce the same result under the guise of an equitable estoppel. *Plumb v. Cattaraugus Insurance Company* was followed in *Rowley v. Empire Insurance Company,* 36 N. Y. 550. It was justly criticised and condemned as founded on erroneous views, by the chief justice in *Dewees v. Manhattan Insurance Company,* as reported in 6 Vroom, 336, and with *Rowley v. Empire Insurance Company,* has been greatly shaken by subsequent decisions in the same court, if it was not practically overruled by *Rohrbach v. Germania Insurance Company,* 62 N. Y. 47, 63. In *Maher v. Hibernia Insurance Company,* 67 N. Y. 283, reformation of the contract of insurance seems to have been regarded as the appropriate method of relief under such circumstances.

"The condition of the law on this important subject in that state is such that it would not be advisable to adopt it, or prudent to endeavor to follow the decisions of its courts. The discordant and irreconcilable decisions which have grown out of the departure from the law as held in *Jennings v. Chenango Co. Ins. Co.* are cited by Judge Folger in *Van Schaick v. Niagara Fire Ins. Co.,* 68 N. Y. 438. Some of the conditions of the policy may be controlled by evidence of the knowledge of the parties at the time the insurance was effected, and others not; but no rule or principle has been promulgated for ascertaining, in advance of the litigation, what stipulations in the contract belong to one class or the other—a condition of the law sure to result from the effort to deal with contracts of this kind in disregard of established rules of law and acknowledged legal principles. * * * *

"It is manifest that the theory that such parol evidence, though it may not be competent to change the written contract, may be received for the purpose of raising an estoppel *in pais,* is a mere evasion of the rule excluding parol testimony when offered to alter a written contract. A party suing on a contract in an action at law must be conclusively presumed to be aware of what the contract contains, and the legal effect of his agreement is that its terms shall be complied with. Extrinsic evidence of the kind under consideration must entirely fail in its object, unless its purpose be to show that the contract expressed in the written contract was not, in reality, the contract as made. A defendant cannot be estopped from making the defence that the contract sued on is not his contract, or that his adversary has himself violated it in those particulars which are made conditions to his right under it, on the ground of negotiations and transactions occurring at the time the contract was entered into, unless the plaintiff is permitted to show from such sources that the contract, as put in writing, does not truly express the intention of the parties. The difficulty lies at the very threshold. An estoppel cannot arise except

upon proof of a contract different from that contained in the written policy, and an inflexible rule of evidence forbids the introduction of such proof by parol testimony, when offered to vary or effect the terms of the written instrument.

"The cases usually cited for the proposition that a contract of insurance is excepted out of the class of written contracts with respect to the admissibility of parol evidence to vary or control the written contract, will be found on examination to be, to a large extent, those in which the proof has been received with a view to a reformation of the policy in equity, or to meet the defence that the contract was induced by false and fraudulent representations not embodied in the contract, or are the decisions of courts in which the legal and equitable jurisdictions are so blended that the functions of a court of equity have been transferred to the jury box * * *. 'The powers of, agents of every kind of principals, to act for and bind their principals, are determined by the unvarying rule of ascertaining what authority is delegated to them. How the contract was affected, whether directly with the insurer or by the intervention of agents, is of no consequence. The question of the admissibility of the testimony does not relate to the method by which the contract was made. It concerns the rule of evidence by which the contract, however made, shall be interpreted.

"Upon principle it is impossible to perceive on what ground such testimony should be received. A policy of insurance is a contract in writing, of such a nature as to be within the general rule of law that a contract in writing cannot be varied or altered by parol testimony. If it be ambiguous in its terms, parol evidence, such as would be competent to remove an ambiguity in other written contracts may be resorted to for the purpose of explaining its meaning. If it incorrectly or imperfectly expresses the actual agreement of the parties, it may be reformed in equity. If strict compliance with the conditions of insurance, with respect to matters to be done by the insured

after the contract has been concluded, has been waived, such waiver, may in general, be shown by extrinsic evidence, by parol. Further than this, it is not safe for a court of law to go. To except policies of insurance out of the class of contracts to which they belong, and deny them the protection of the rule of law that a contract which is put in writing shall not be altered or varied by parol evidence of the contract the parties intended to make, as distinguished from what appears, by the written contract, to be that which they have in fact made, is a violation of the principle that will open the door to the grossest frauds * * * *. A court of law can do nothing but enforce the contract as the parties have made it. The legal rule that in courts of law the written contract shall be regarded as the sole repository of the intentions of the parties, and that its terms cannot be changed by parol testimony, is of the utmost importance in the trial of jury cases, and can never be departed from without the risk of disastrous consequences to the rights of parties.'

"*Dewes v. Manhattan Ins. Co.,* 35 N. J. Law 366, referred to in the case just cited, reports an opinion by Chief Justice Beasly, and from which we shall quote, as it contains, we think, an able and sound statement of the law on this important subject:

"The contract between these litigants, on the point which I shall discuss, is clear and unambiguous. The defendants agreed to insure a building occupied as a country store, and the stock of goods, consisting of the usual variety of such a store. This, by the plain meaning of the terms, is a warranty on the part of the insured that the building was used, at the date of the agreement, for the purpose specified. It was a representation on the face of the policy, touching the premises in question, and which affected the risk; and such a representation, according to all the authorities, amounts to a warranty * * *. The cases are numerous and decisive on the subject; so much so that it does not appear to me to be necessary to refer to them in detail.

as, in my opinion, the character of a representation of this kind is apparent upon its face. It can be intended for no other purpose than to characterize the use of the building at the date of the insurance; for, unless this be done, there can be no restriction on the use of the property by the insured, during the running of the risk. Unless this description has the force thus attributed to it the premises could have been used for any of the most hazardous purposes. A building described in a policy as a dwelling house could, except for the rule above stated, be converted into a mill or factory. I think it is contestably clear that the description of the use of the premises in this case was meant to define the character of the risk to be assumed by the defendants.

"But, besides this, it is plain that the written contract was violated, in a fatal particular, by the assured. By the express terms of one of the stipulations of the insurance, it is declared that, if the premises should be used 'for the purpose of carrying on therein any trade or vocation, or for storing or keeping therein any articles, goods or merchandise denominated hazardous, or extra hazardous, or specially hazardous, in the second class of the classes of hazards annexed to this policy, etc., from thenceforth, so long as the same shall be so used, etc., the policy shall be of no force or effect.' Among the extra hazardous risks, that of keeping a 'private stable' is enunciated, and it was shown on the trial, and was not denied, that, at the date of the policy, and at the time of the fire, a part of the building insured was applied by the plaintiff to this use.

"It cannot be denied, then, that if we take into view these conditions of the case alone, the plaintiff's action must fall to the ground. He did an act which, by force of his written agreement, had the effect to suspend, temporarily, his insurance. As this fact, having this destructive effect, could not be disputed, it became necessary in order to save the plaintiff's action, to avoid the effect of the written contract; and this burden was assumed, on the ground of ar-

gument, by the counsel of the plaintiff. The position taken with this view was, that the policy was obtained for the plaintiff by the agents of the defendant, and that they knew that the building in question was, in part, used as a stable.

"The plaintiff's claim appears to be a meritorious one and on this account, and in the hope that there might be found some legal ground on which to support this action, the case was allowed by me, at the circuit, to go to the jury and the questions of law were reserved for this court. But the consideration which I have since given the matters involved has excluded the faintest idea that, upon legal principles, this suit can be successfully carried through. In my opinion, that end can be attained only by the sacrifice of legal rules which are settled, and are of the greatest importannce. Let us look at the proposition to which we are asked to give our assent.

"The contract of these parties, as it had been committed to writing is, that if the plaintiff shall keep a stable on the premises insured, for the time being, the policy shall be vacated. But, it is said, the agents of the defendants who procured this contract were aware that the real contract designed to be made was, that the plaintiff might apply the premises to this use. This knowledge of the agent, of the defendants, and which, it is contended, will bind the defendants is to have the effect to vary the obligations of the written contract. Upon what principle can this be done? There is no pretense of any fraud in the procurement of this policy. The only ground that can be taken is, that the agent, knowing that the premises were to be, in part, used as a stable, should have so described the use in the policy. The assumption is, and must be, that the warranty in its present form, was a mistake in the agent. But a mistake cannot be corrected, in conformity with our judicial system, in a court of law. No one can doubt that, in a proper case of this kind, an equitable remedy exists. 'There cannot be, at the present day,' says Mr. Justice Story, 'any serious

doubt that a court of equity has authority to reform a contract, where there has been an omission of a material stipulation by mistake; and a policy of insurance is just as much within the reach of the principle as any other contract. (*Andrews v. Essex Fire & Marine Ins. Co.*, 3 Mason 10.)

"It is possible, therefore, that in this case, in equity the present contract might be reformed, so as to permit the plaintiff to keep his stable in this building, but I think it has never before been supposed that this end could be reached in this state, by proof before the jury in a trial at the circuit. The principle would cover a very wide field, for, if this mistake can be there corrected so can every possible mistake. If the plaintiff can modify the stipulation with respect to the restricted use of the premises, on the plea of a mistake in the stipulation, on similar grounds it would be open to the company to modify the policy with respect to the amount insured. I am at a loss to see how, on the adoption of the principle claimed, we are to keep separate the functions of our legal and equitable tribunals. Nor do I think if this court sustain the present action, that it could be practicable to preserve in any useful form, the great primary rule that written instruments are not to be varied or contradicted by parol evidence. The knowledge of the agent in the present transaction is important only as a showing what the tacit understanding of the contracting parties was. Suppose, instead of proof of such tacit understanding, the plaintiff had offered to make a stronger case by showing that the agent expressly agreed that the building might be used not only as a country store, as the policy stated, but also as a stable, and that the restraining stipulation did not apply to the extent expressed. Can any one doubt that, according to the practice and decisions of this state, such proof would have been rejected? A rule of law admitting such evidence would be a repeal of the principle, giving a controlling efficacy to written agreements. The memory and understanding of those present at the formation of the contract would be quite as potent as the written instrument.

"I have not found that it is anywhere supposed that this general rule which illegalizes parol evidence under the conditions in question has been relaxed with respect to contracts of insurance. Decisions of the utmost authority, both in England and in this country, propound this doctrine as applicable to policies in the clearest terms."

In *United Firemen's Ins. Co. v. Thomas,* 82 Fed. Rep. 406, it was decided that:

"Knowledge by the agent of an insurance company, at the time of procuring the insurance, that the insured intended .to take out other insurance, does not operate as a waiver of a condition in the policy subsequently delivered forbidding other insurance, except by consent of the insurance company endorsed on the policy. The rule that a parol understanding or agreement cannot control a subsequent contract applies, and the waiver to be effectual, must be subsequent to the written contract, and must be made, not only with knowledge of the other insurance, and with intent to waive the condition, but must be supported by a valuable consideration, or become operative by way of estoppel."

In discussing the subject of the admissibility of parol evidence to vary or contradict the terms of an insurance policy and the doctrine of waiver, Jenkins, circuit judge, uses the following language:

"It is the settled law with respect to written contracts of insurance, as well as to other written contracts, that all negotiations or agreements leading up to the written contracts are merged in it, and that parol evidence of a supposed prior agreement cannot be entertained to contradict the express stipulations of the written contract. Thus, in *Thompson v. Insurance Co.,* 104 U. S. 252, 259, it was ruled that 'a parol agreement, made at the time of issuing a policy, contradicting the terms of the policy itself, like any other parol agreement inconsistent with a written instrument made contemporary therewith, is void, and cannot be set

up to contradict the writing.' We have had occasion to speak to the same effect, and in no doubtful language. (*Union Stock Yards & Transit Co. v. Western Land & Cattle Co.*, 18 U. S. App. 438, 453, C. C. A. 660, and 59 Fed. 49; *Gorrell v. Insurance Co.*, 24 U. S. App. 188, 11 C C. A. 240, and 63 Fed. 371; *Lumber Co. v. Comstock*, 34 U. S. App. 414, 18 C. C. A. 207, and 71 Fed. 477.) The written contract speaks conclusively the agreement of the parties, and cannot be contradicted by parol. Therefore a supposed agreement to permit other insurance, made before the written contract, cannot avail to defeat the subsequent express stipulations of the written instrument. Much less can mere knowledge of an intention of the proposed assured to effect, or that he had effected, other insurance, avoid the conditions of the subsequent written contract. The assured knows, or is bound to inform himself, of the conditions and stipulations of his contract before it is accepted. He should not be allowed to accept the contract, and afterwards defeat an essential condition of it, through plea of ignorance of its conditions. Nor do we understand that the doctrine of waiver can have application here. A waiver is an intentional relinquishment of a known right, an election by one to dispense with something of value, or to forego some advantage he might have taken or insisted upon. (*Warren v. Crane*, 50 Mich. 301, 15 N. W. 465.) Mr. Bishop thus defines the term:

" 'Waiver is where one in possession of any right, whether conferred by law or by contract, and with full knowledge of a material fact, does or forbears the doing of something inconsistent with the existence of the right, or of his intention to rely upon it. Thereupon he is said to have waived it, and he is precluded from claiming anything by reason of it afterwards.' (Bishop Cont. Sec. 792.)

"But manifestly there can be no waiver of a non-existing right, of that which does not exist. Delivery of the policy containing the stipulations against other insurance under circumstances which indicate a previous or contemporaneous parol agreement that such other insurance would

be permitted cannot avail, for within the decision in *Thompson v. Insurance Co., supra,* and the other cases cited, no prior or contemporary parol agreement can be set up to contradict the writing. The waiver must be subsequent to the written contract, and, to be operative must be made not only with knowledge of the fact of other insurance, and with intent to waive the provisions of the existing contract, but must be supported by a valuable consideration, or become operative by way of estoppel. Here, subsequent to the supposed knowledge of an intent to effect other insurance, the parties stipulated by their contract that it should be void if other insurance had been or should be effected, and that no waiver of any condition of the contract should be valid unless written upon or attached to the policy. An intent to waive cannot be entertained from the mere fact of knowledge in the face of an express term of the contract made and delivered subsequent to such knowledge. There was here no intent or agreement to waive subsequent to the delivery of the contract, and no consideration for a waiver is disclosed, nor is any estoppel proven. There was no act or conduct upon the part of the insurance company subsequent to the delivery of the contract, inducing change of position by the assured. He knew, or should have known, of the conditions of the policy, and, so knowing them, was informed of the terms of the contract proposed by the insurance company, and with such knowledge paid the premium demanded."

It must therefore follow that the acts and conduct of the agents of the insurance company prior to and at the time of the execution of the policy, which is the subject of this controversy, were wholly insufficient to constitute a waiver, such waiver not having been endorsed upon or attached to the policy as required by its express provisions. There is no evidence in the record to show that the local agent, after he had delivered the policy and received the premium, communicated with the insurance company that

any of the conditions and stipulations contained in the policy were waived. And there is no evidence to show that the insurance company had any knowledge of the fact that the clear space lumber clause attached to the policy had been violated by the agent prior to the loss, and hence, there is not the slightest grounds for claiming that the insurance company, with knowledge of the facts, either accepted or retained the premium and subsequently ratified the unauthorized acts of its agents. In short, there was no waiver, no estoppel or ratification either by the agent or the insurance company that would render it liable upon its policy. The rule announced by the supreme court of the United States in the case of *Assurance Company v. Building Association, supra,* where it was declared that: "Where the waiver relied on is the act of an agent, it must be shown either that the agent had express authority from the company, to make the waiver, or that the company, subsequently, with knowledge of the facts, ratified the action of the agent," is not only directly in point but is decisive of this question.

We do not deem it necessary to further review the state decisions which are in irreconcilable conflict with the latest expression of the supreme court of the United States upon this important subject. We think that the decisions of the supreme court of the United States are the correct and sound rule to adopt, and that the doctrine announced by the later cases of a number of the state courts and some of the federal courts is a wide departure from the true interpretation of valid written contracts and is violative of the fundamental principles of the law of agency. The rule of law which admits parol testimony to vary or change the terms of a valid written instrument, whose terms are free from doubt or ambiguity, repeals the fundamental

principle that the written instrument must control over the verbal negotiations and statements made prior to and contemporaneous with, the execution of the instrument. It also contravenes the fundamental doctrine that an agent cannot act beyond the scope of his authority. It is also in conflict with the doctrine that a principle has the undoubted authority to limit the powers of an agent in a contract, and such grant of authority is the measure and limit of the agent's power in such matter; and where the limitations of the agent are expressed in the instrument, the parties thereto are bound to have full notice and knowledge thereof. In this connection it must be borne in mind that the supreme court of the United States is our court of last resort in this territory, and that its decisions are binding upon this court.

From a consideration of the foregoing authorities we deduce the following general rules:

1. It is a fundamental rule of law that parol, contemporaneous evidence is inadmissible to contradict or vary the terms of a valid written instrument.

2. That when parties have deliberately entered into a written contract in such terms as import a legal obligation without any uncertainty as to the object or intent of such transaction, it is conclusively presumed that the whole transaction of the parties and the extent and manner of their undertaking was reduced to writing and all oral testimony of previous negotiations or statements between the parties, or contemporaneous therewith, are merged in the written instrument in the absence of fraud or mutual mistake of the parties.

3. That a contract in writing, if its terms are free from doubt or ambiguity, must be permitted to speak for

itself, and cannot by courts, at the instance of one of the parties, be altered or contradicted by parol evidence, unless in case of fraud or mutual mistake of facts, and this principle is applicable to contracts of insurance.

4. A stipulation in an insurance policy which reads: "Waranted by the assured that a clear space of 200 feet, tramways excepted, shall always be maintained between the lumber hereby insured and any mill or other manufacturing establishment, or else this policy shall be void," is a reasonable and competent provision to insert or attach to the policy.

5. It is reasonable and competent for insurance companies to provide in their policies that no officer, agent or other representative of the company shall have the power to waive such stipulation of warranty, unless endorsed thereon or added thereto.

6. Where an insurance policy contains such a stipulation of warranty, and provides that no officer, agent or other representative of the company shall have the power to waive any condition or provision of the policy, unless such waiver shall be written upon or attached thereto, such limited grant of authority is the measure of their power.

7. Where such limitation is expressed in the policy, the assured is presumed to have notice and knowledge of such limitation, and is bound thereby.

8. Where the waiver relied on is the act of an agent of the insurance company, it must be shown that the agent had express authority from the company to make the waiver, or that the company subsequently, with knowledge of the facts, ratified the unauthorized action of the agent.

The judgment of the district court of Oklahoma county is, therefore, reversed and the cause remanded with directions

to grant a new trial and further proceed in consonance with this opinion.

Burwell, J., who presided in the court below, not sitting; Irwin, J., absent; all the other Justices concurring.