## The American Insurance Company v. Orin F. Gilbert.

*Insurance : Policy : Application : Warranty : Materiality to the risk.* A policy of insurance, referring to an application and making it a part of the policy and a warranty by the assured, which provides that "false representations by the assured of the condition, situation, or occupancy of the property, or any omission to make known any fact material to the risk, or an over-valuation, or any misrepresentation whatever, either in the written application or otherwise, shall render the policy void," is construed to make warranties of the representations and statements referred to, whether material to the risk or not; and materiality to the risk is held to be a limitation attached only to the omission to state facts.

*Over-valuation : Warranty.* It appeared in this case, by the plaintiff's own showing, that there was a clear over-valuation, known at the time to be so, of the property insured; and also a known violation of the by-laws of the company (which were made a part of the policy), such as to amount to a clear breach of the warranty, and to render the policy void.

*Application : Valuation : Responsibility of the insured for statements of value.* The circumstances under which the application is claimed in this case to have been made out, with the assistance and according to the suggestions of an agent of the company, were held not to be such as to make the statement of value the act of the company by such agent, instead of that of the insured.

An applicant for insurance cannot escape responsibility for the statement of facts which he inserts himself in the application, or permits an agent of the insurer to insert as his, upon which he is just as well informed as the agent himself, such as the condition, situation, and value of his own property to be insured, by showing that he was induced by such agent, knowingly and against his own judgment, to state them falsely.

*Statement of value: Evidence: Charge to the jury.* The evidence in this case did not warrant any charge to the jury upon the hypothesis that "the plaintiff was induced by the agent of the company to sign the application for insurance, under the honest belief that it was right" in respect to the statement of values.

*Policy of insurance: Notice.* The form of the policy in this case was such as to notify one accepting it that he was himself responsible for the statement of values, by whomsoever made, in the application.

*Over-valuation: Statement of value: Warranty: Intent.* Under such a policy, the question of over-valuation in the application is not one to be submitted to the jury as a question of fraud or good faith simply; but the statement of value is to be treated as a warranty, of which any substantial over-estimate is a breach, whatever the intent.

*Omissions: Materiality to the risk.* The omission to state, in the application, a small mortgage upon the property, which, by the terms of plaintiff's contract of purchase, his vendor was bound to pay, and which was less than the amount unpaid on said contract, was one not material to the risk, and therefore, under the terms of the policy, unimportant.

*Heard May 2.    Decided July 15.*

Error to Washtenaw Circuit.

*W. K. Gibson,* for plaintiff in error.

*S. E. Engle* and *H. J. Beakes,* for defendant in error.

CHRISTIANCY, CH. J.

This was an action brought by Gilbert, the defendant in error, against the insurance company, upon a policy of insurance upon a dwelling house, and barn and shed, and the personal property in each, as well as certain personal property on the farm of plaintiff. The policy was dated September 26, 1871, and was for five years from the 19th day of August 1871. The house with the barn and its adjoining shed were burned on the 11th of November, 1871, with some of the personal property in each, and the action was brought for this loss.

The policy was issued upon a written (and printed) application, signed by the plaintiff, the printed form for which seems to have been furnished by the company, with blanks to be filled; and printed questions to be answered thereon in writing by the applicant. The plaintiff had no legal title to the buildings insured, but had, in April pre-

vious, obtained a contract from one Prentice for the purchase of the farm of eighty acres, including the buildings, for the price of four thousand dollars, upon which he had paid Prentice only fifty dollars; and the balance was to be paid in instalments, the first being for two thousand dollars payable April, 1872, upon payment of which he was to receive a deed and give a mortgage back to Prentice for the balance. Prentice covenanted to convey a good title, free of incumbrances. At the time of this contract, and at the time of the loss, there was an outstanding mortgage to one Smally on the land, upon which there was a balance of some three hundred dollars or more unpaid. The principal questions involved are: 1st. Whether there was not an overvaluation of the house and barn by the plaintiff in his application; and, 2d. Whether the plaintiff did not fail truly to state the incumbrances in answer to a question upon that subject contained in the application. The policy refers to the application, and expressly makes it "a part of the policy, and a warranty by the assured," and it further, in this immediate connection, provides that "false representation by the assured, of the condition, situation or occupancy of the property, or any omission to make known any fact material to the risk, or an over-valuation, or any misrepresentation whatever, either in the written application or otherwise, shall render the policy void." By this provision, it is true, that, to render the policy void on account of an omission to state a fact, the fact omitted must be one material to the risk. But the provision in reference to false representation, or misrepresentation, which shall render the policy void, is not thus limited by the language used, and cannot be so limited without doing violence to that language. Nor does it follow, as argued by the counsel for the defendant in error, that the use of these terms, "false representations," and "misrepresentations," indicates an intent to reduce the object of all the statements of the assured contained in his application to that of representations, instead of warranties. On the contrary, the plain

object, as it seems to me, of inserting this provision in reference to false representations and misrepresentations, so far as they might be contained in the application, was to explain and apply the general provision making all the statements in that application warranties.

Hence, like the warranty to which the provision refers, the effect of such false representations or misrepresentations is not made to depend upon the question, whether they relate to matters material to the risk, but they are to render the policy void, whether material to the risk or not. In other words, it would seem to have been the clear intent of the whole provision, including that of the warranty with which it is immediately connected, to make every actual misrepresentation contained in the application a warranty which, if false, should render the policy void; while the mere suppression of, or omission to state, any fact, should only have that effect when the fact suppressed was one material to the risk. This is not like the case of *Elliott v. Hamilton Mut. Ins. Co., 13 Gray, 139,* where, though the application was made part of the policy and a warranty on the part of the assured, yet, by the express language of the provision, the misrepresentation and the suppression of facts were placed upon the same footing, and both confined to material facts. Thus, only facts material to the risk came within the warranty. Where there is no express stipulation making representations warranties, courts very properly incline to treat them as representations merely, and therefore of no consequence, unless shown to be material to the risk. But parties have a right to make their own contracts upon such terms and conditions in this respect as they see fit. And if the insured chooses to make his representations warranties, the question of their materiality becomes unimportant, or rather (for this is the principle involved) the insurer is relieved from showing, and the assured is estopped from denying, that they are material to the *contract ;* and no court can be permitted to say that the insurer did not deem them material

to the risk, or that he would have made the contract upon other terms than he has made it. There may be many matters which the insurer may deem, and which experience may have satisfied him are, material to the risk, but the materiality of which he might not be able to prove to the satisfaction of a jury; and he has a right to refuse to insure, unless upon the terms that such matters shall be made warranties by the assured; and when so made, it is an agreement on the part of the assured, not only to warrant the truth of such matters, but that they are material to the contract, and that, if false, the contract shall be void. All the statements and representations, therefore, contained in the application, must be treated as warranties; and therefore, according to the general rule, as settled by the great weight of authorities, must be strictly true to authorize a recovery. upon the policy. It is, however, sufficient for all the purposes of the present case to say, that they must be substantially true. The application states the value of the house at four thousand dollars, and asks for two thousand five hundred dollars insurance, and the value of the barn at three hundred and fifty dollars, and asks insurance for two hundred and fifty dollars. The application states that the loss, if any, is to be "payable to mortgagee, so far as his interest may appear,—John Prentice mortgagee."

To the question: "Where situate?" the answer is: "On section 24, town 4 south, range 5 east, county of Washtenaw." The printed part of the application states: "If the following questions are not answered, this application will be returned," and then proceeds to ask: "What is the title?" to which the answer is: "Article of agreement." "For what purpose occupied, and by whom." Answer: "Dwelling, by Orin F. Gilbert." "Is your property incumbered, by what, and to what extent?" Answer: "By mortgage, four thousand dollars." "If incumbered, what is the whole value of your real estate (including buildings and land)?" Answer: "Value, eight thousand dollars or more." To the question: "State height of buildings to

be insured, and distance from each other," he answered: "House 26 by 30, posts 16 feet." To the question: "In what state of repair?" (which clearly refers to all the buildings to be insured), he answers: "Good."

Upon this application the policy was issued, insuring the house for two thousand five hundred dollars, and the barn for two hundred and fifty dollars, and personal property, upon the value of which no question arises in this case, for the balance, making the whole policy five thousand five hundred and fifty dollars.

The policy (in addition to the provision making the application a part of it, and a warranty, as already noticed) contains the provision, that the company are to make good to the assured, his executors, etc., " all such immediate loss or damage, not exceeding in amount the sum insured, nor exceeding two-thirds the cash value of the buildings above specified, nor exceeding the cash value of the personal property hereby insured, as shall happen by fire and lightning," etc. It also contains a provision, at the close, in these words: "This policy is made and accepted upon the above express · conditions, and the charter and by-laws of the company, which are to be resorted to and used to explain the rights and obligations of the parties hereto, in all cases not herein otherwise specially provided for, and which are hereby made a part of the policy." By the second section of the charter alluded to, it is provided that all persons insuring in the company, their respective heirs, etc., "continuing to be insured therein, shall be deemed and taken to be members thereof, for and during the term specified in their respective policies, and no longer, and shall at all times be concluded and bound by the provisions of this act." By section 6: "Insurance shall be made in all cases upon the representations of the assured, contained in his application therefor, and signed by himself or his attorney; which representation shall, in fairness and good faith, state all the material circumstances within his knowledge which may affect the risk."

By section 12: "Every member of said company shall be and is hereby bound to pay his proportion of the losses and expenses happening or accruing in and to said company; and all buildings insured by and in said company, together with the right, title and interest of the assured to the land on which they stand, shall be pledged to said company, and the said company shall have a lien thereon against the assured during the continuance of his, her, or their policies." Now, upon the question whether there was an over-valuation upon the house and barn, the itemized estimate made by mechanics after the fire, to rebuild the house, makes the cost of building anew just such a house, only one thousand nine hundred and thirteen dollars and ninety-nine cents. The plaintiff himself admits that the house was not worth, at the time of application, the four thousand dollars, and that he knew it was not; that its real value was about three thousand dollars. He admits, also, that the barn was then worth only about one hundred and fifty dollars, as it stood, but was worth, for the purpose of repairing, two hundred to two hundred and fifty dollars. And the testimony of the other witnesses tended to show the value to range from two thousand dollars to three thousand dollars. Plaintiff also admits that he knew the company would not insure buildings for their full value; but he says he thought they would insure for about three-quarters of the value [while all the other testimony shows, and this appears upon the policy, that they only insure buildings to two-thirds]. It thus appears, by the plaintiff's own showing, that there was a clear over-valuation, known at the time to be so, both of the house and the barn; and further, that the barn was insured for a much larger sum than its entire worth, and the house for more than three-fourths its value, in known violation of the rules of the company. This must be held a clear breach of the warranty, rendering the policy void, unless the explanation which he makes, and the action of Ellis, the agent, in reference to the valuation

and the basis of it, shall be held to show a waiver on the part of the company; or rather, that the valuation, under the circumstances, is to be treated as the act of the company itself, by its agent, and not that of the plaintiff.

His explanation is, that he was acting for the insurance company,—employed by, and as a kind of a sub-agent of, Ellis, who was the agent,—in taking applications for insurance in this company, at the time Ellis called upon him in reference to insuring his property, which was about the 19th of August, 1871, and had been so employed for some weeks previous; had some experience in fire insurance in making proof of losses; knew it was necessary to state the value of the buildings, and their true condition, in the application; and before his application, upon which this policy was issued, he had received his appointment directly from the company as agent for them, and, as he says, he had been furnished with, and had in his hands, plenty of applications and blanks ordinarily used by this company.

At this first interview with Ellis, in reference to this insurance, on the 19th of August, he says he and Ellis examined the buildings, especially the house; that Ellis wanted to know what he thought the house worth; that he answered him, "three thousand dollars or more; and then I was to put up an addition that this insurance was to cover; this was for kitchen and wood-shed, 16x24 feet, one story high. I asked him if that could be done. I was to have an addition for a summer kitchen and woodhouse;" that the four thousand dollars was the estimated value of the house with the addition, and some blinds he expected to put on, and he says: "I thought he estimated it pretty high at the time." Being asked whose estimate this was, he says: "I think Mr. Ellis spoke about it. I told him I thought it would be worth three thousand dollars or more; he said he thought it would be worth four thousand dollars." As to the barn, he says: "I told him (Ellis) what I wanted to do with it; I wanted to repair the barn over; he (meaning Ellis) says, 'I will give you

two hundred and fifty dollars insurance on it.' I told him, very well." Being asked if Ellis used any means to induce him to state that the barn was in good repair, he says: "Nothing more than that he filled the application out, and said it was all right. I told him what I was going to do." And he says Ellis told him that the insurance would cover this addition, and that he would draw it out on the application; that a diagram of the house, including the addition, was drawn by Ellis, on the back of the applicaation. But this diagram was not referred to in the first application written by Ellis, which, in answer to the question as to the size and height of buildings to be insured, says: "House 26x30," and in the subsequent one, written by the plaintiff, in answer to the same question, he says: "House 16 by 30 feet," showing clearly that this was all he applied for insurance upon. Plaintiff admits that the house, even with the addition, would be worth less than four thousand dollars; but says at the time he supposed the insurance would cover the cellar and foundation, and he estimated these in. He admits that he did not mention to Ellis the Smally mortgage; says he did not think of it. But says he told Ellis his title was but a contract, which he explained to him, and that there was four thousand dollars to be paid; and that Ellis said it would be proper to state this as a mortgage of four thousand dollars.

This first application, then, was filled out in the hand-writing of Ellis on the 19th of August, and sent afterwards to the company, stating the value of the house at four thousand dollars, its size and height "26 by 30"; title, "article of agreement." In answer to the question whether the property was incumbered: "Yes; mortgage four thousand dollars." Question: "If incumbered, what is the value of real estate, including buildings and lands?" Answer: "Eight thousand dollars." This application stated: "Losses, if any, payable to mortgagee, or as far as his interest may appear," but did not name the mortgagee. And on the 24th of August this returned to Ellis by letter for correc-

tion by naming mortgagee, and for statement of location; and on the 27th, Ellis writes to Gilbert, inclosing application, for correction in these respects. And Gilbert himself, having his appointment as agent of the company in the same letter, sits down—as he states—and fills out the application upon which the policy was issued. He says this application, with the exception of the particulars above stated as requiring correction, was a copy of that made by Ellis. But while in most particulars it is the same, in many others it is quite variant and evidently is not a copy, but shows in several particulars, at least, he was acting on his own judgment, though the valuation of the buildings and the statement of the incumbrance are the same. Upon this application, made by the plaintiff himself, in the manner just described, the policy was issued. It is proper to state here that the testimony of the plaintiff in reference to the insertion of the statement of the valuation of the property, and the intention to insure the additions to be made to the house, and in most other particulars material to the case, is directly contradicted by Ellis, who says he did not assume to value the property at all, but left that to be done by the plaintiff, merely inserting plaintiff's own estimate; and denies that there was any understanding that the additions were to be covered by the policy. But, as the jury might have believed plaintiff, instead of Ellis, we must, for the purposes of this case, treat that of the plaintiff as true, except when contradictory, or when his own explanation shows it to be untrue, or if true, that he had no right to rely on the matter so stated.

The court charged correctly in one part of his charge, that the application was a part of the contract, and a warranty, and that each of the representations contained in it was a warranty. But he added, in qualification of this charge, that "if the application for this policy was made out, —that is, written—by the agent of the defendant, or by his dictation, and the plaintiff fully and truly stated to the agent all the material facts connected with the property,

and in reference to which questions were asked, or information sought, and if such agent, after receiving such information, made out the application, or dictated it, and it was made out by him or by his dictation, and as he said it was sufficient and right, and the plaintiff was induced by the agent to sign the application under the honest belief that it was right, then the defendant, if you so find, will not be allowed to take advantage of any incorrect statement or omission in the application, whether it is to be considered as a warranty or not; but will be bound by the act of the agent, and will be estopped from contesting the truthfulness, or fairness or correctness of the statements contained in it."

We are only concerned with this part of the charge so far as it relates to the valuation of the buildings stated in the application; and, as relates. to this point, it is proper to say that, upon the plaintiff's own statement of his own case, and upon his own oath, there was no evidence upon which such a charge could be based (and it certainly is not claimed that aside from his testimony there was any to warrant it). The very form and obvious purpose of the application, with the questions contained in it, showed that the statements it contained were to be understood as made by the applicant, and upon his responsibility, as the basis of the contract of insurance he expected to obtain. And, though a person ignorant of the meaning of the particular terms and special provisions used in such papers, or in the policy, or of the sense attached to them by the insurers, or of the particular rules or manner of doing business, has a right to rely on the instructions and assurances of the agent of such insurers, and upon his acts in reference to such matters, in filling out the application; yet he can not, therefore, escape the responsibility for the statement of facts which he inserts himself in the application, or permits the agent to insert, as his, *upon which he is just as well informed as the agent himself.* Now, the value of the plaintiff's house, in which he lived, and of his barn on the same premises, was a matter upon which, in the very nature

of things, he must be presumed to be at least as well informed as the agent Ellis, who had been there but once. The plaintiff admits that he knew it was necessary to state the true value of the buildings, and their true condition; that the company did not insure buildings to their full value, but, as he says, about three-fourths (in fact it was but two-thirds); yet he admits he knew the house was not worth the four thousand dollars, as stated in the application, but only about three thousand dollars, on which he applied for and obtained insurance for two thousand five hundred dollars, and that the barn, stated to be worth three hundred and fifty dollars, was not worth two hundred and fifty dollars for any purpose, and he applied for and obtained insurance for two hundred and fifty dollars. And at the very time he fills out the last application, at least, he was an agent himself of the company, and was a sub-agent, procuring applications for insurance for them, at the time Ellis, the agent, wrote the first application. I think the plaintiff was bound to know that the addition, not yet built, to the house, and which might never be built (and in fact never was), did not add to the present value of the house; and the fact that in the application made out by himself he describes only the house as it was, without the addition, proves that he did know that he was placing the valuation of four thousand dollars upon the house as it was, without the addition, and that it must be so understood by the company. But he even admits the house would not be worth the four thousand dollars with the addition. In such a case, as shown by the plaintiff himself, clearly there was no ground for a charge leaving it to the jury to find whether " the plaintiff was induced by the agent to sign the application under the honest belief that it was right," in respect to the value stated. Even if the plaintiff did not know at the time of taking the application that the estimate of value was made upon his own responsibility, yet he accepted the policy upon the terms and conditions stated in it, one of which was that the charter and by-laws

of the company were to be considered a part of the policy, to be resorted to, to explain the rights and obligations of the company; and the charter required that insurance should be made at all times upon the responsibility of the assured, upon statements contained in his application and signed by himself or his attorney.   And the policy, upon its face, made the application a part of the contract and a warranty, and declared that any over-valuation should render the policy void.   This, at least, notified him that he was the party responsible for the statement of value by whomsoever made, as it was not a matter upon which the agent was better informed than he was; and if not satisfied with the terms of the policy, he should have refused to accept it.

The court also erred in a subsequent portion of the charge upon the question of valuation, in submitting the question of over-valuation simply as one of fraud or good faith, and in stating to the jury that, if the applicant placed a value upon the property which he honestly believed to be within its legitimate value, it would not render the policy void, although larger than the value of the property, as estimated by others.   Doubtless a very slight variation should be disregarded; but I think the applicant must be held responsible for any substantial excess when he thus warrants the value.   *First*, there was no room for such a charge; as already shown, the plaintiff admitted that he knew the valuation stated in the application was above the true value; but, *second*, the question to be submitted to the jury upon this point under the warranty was not necessarily one of fraud, but simply one of fact, whether the property was in fact over-estimated, whether the intent was good or bad; and, *third*, this part of the charge was inconsistent with the portion of the charge declaring all the representations in the application warranties; and it tended to confuse the jury.

In reference to the omission to state the Smalley mortgage, or the small amount due upon it, the court charged,

in substance, that inasmuch as Prentice, by his contract, had undertaken to convey to plaintiff a good title, and was therefore bound to pay off the amount due on this mortgage, and would not be entitled to the four thousand dollars from the plaintiff until he had done so, and could only recover the four thousand dollars less the sum due on that mortgage, the latter was, in legal effect, included in the statement of the four thousand dollar mortgage to Prentice; and as it seemed to be conceded that the sum due Prentice on the contract was what was intended as the four thousand dollar mortgage, we think this charge substantially correct. I do not see the force of the objection argued by the counsel for the plaintiff in error: " Suppose," he says, " that Gilbert should pay the whole purchase price, relying on Prentice to remove the mortgage lien, and Prentice should not pay it, and allow it to be foreclosed; or suppose the holder should foreclose and Gilbert refuse to pay the amount of the four thousand dollars, choosing to rely on the personal responsibility of Prentice to carry out the contract, and Prentice also refuses to pay, then the land may be sold and Gilbert driven to a personal action against Prentice."

But all this might equally happen if the mortgage had been mentioned; and such suppositions rest upon no different ground from one which supposes Gilbert may fail, or not choose to pay the contract price to Prentice, which included this mortgage; and that his rights may thus be lost. And in case Gilbert should fail or be likely not to pay the contract price, and the insurance company should seek to be subrogated to his rights, the mortgage debt would, as to them, also constitute a part of the purchase price yet coming to Prentice; and they could avail themselves of it as so much payment. The omission to state this fact, within the express provision of the policy, could not prejudice the plaintiff, unless the existence of the mortgage debt to Smalley was " material to the risk;" and we think it so clear that it was not material, that it was quite

unnecessary to submit to the jury the question of its materiality.

Several other questions were raised by the exceptions and assignments of error, but as they were not relied upon on the argument, it is unnecessary to notice them.

The judgment must be reversed, with costs, and a new trial awarded.

The other Justices concurred.