HON. JNO. H. BURFORD, CHIEF JUSTICE.
HON. BAYARD T. HAINER,
HON. BENJ. F. BURWELL,
HON. CLINTON F. IRWIN,
HON. FRANK E. GILLETTE.
HON. J. L. PANCOAST,
HON. JAMES K. BEAUCHAMP,
} ASSOCIATE JUSTICES.

THE DEMING INVESTMENT COMPANY *a corporation*, v. SHAW-
NEE FIRE INSURANCE COMPANY, *a corporation.*

(Filed September 6, 1905.)

1. INSURANCE—Reasonable Stipulations. Where an application for
fire insurance is made for the purpose  of informing the insurance
company of the facts with reference to the property  sought to be
insured, and to furnish it information upon which it is to act in ac-
cepting or refusing the risk, and wherein the applicant warrants his
answers to be· true, a stipulat⁺on in the application and policy that

Deming Investment Co. v. Shawnee Ins. Co.

if any of the statements made in the application by the applicant are untrue, the policy shall be void, is a reasonable stipulation.

2. SAME—Waiver—Agency. Where a waiver of the stipulations and conditions contained in a policy of fire insurance relied upon is the act and conduct of an agent of the insurance company, it must be shown that the agent had express authoriy from the company to make the waiver, or that the company subsequently, with knowledge of the facts, ratified the unauthorized action of the agent.

3. SAME—Powers of Agent. An agent for a fire insurance company whose powers are strictly defined and limited by the express terms of the contract of insurance, cannot act so as to bind his company beyond the scope of his authority.

4. EVIDENCE, PAROL—Contracts. A contract in writing if its terms are free from doubt and ambiguity, must be permitted to speak for itself, and cannot, at the instance of one of the parties be altered or contradicted by parol evidence, unless in case of fraud or mutual mistake of facts; and this principle is applicable to contracts of insurance.

5. INSURANCE—Representations in Application—Estoppel. Where by the express terms of an application for, and by the terms of the policy of fire insurance, the application is made a part of the contract of insurance, and the representations contained in the application made by the applicant are warranted by him, and it is stipulated that the policy shall be void if any of such representations are not true, the question of the materiality of such representations becomes unimportant, for under such stipulations, in a suit to recover loss occasioned by the destruction by fire of the property insured, the insurance company is relieved from showing and the insured is estopped from denying that they were material to the contract.

6. PLEADING—Estoppels—Evidence. All acts, representations and conduct relied on as an estoppel should be specially pleaded before evidence to establish the same can be received.

(Syllabus by the Court.)

*Error from the District Court of Cleveland County; before C. F. Irwin, Trial Judge.*

*Snyder & Clark* and *A. Miller Hammett*, for plaintiff in error.

*Shartel, Keaton & Wells*, for defendant in error.

Opinion of the court by

BEAUCHAMP, J.: This action was commenced by plaintiff in error against defendant in error in the district court of Cleveland county, to recover upon a fire insurance policy issued by the defendant in error to the plaintiff in error, covering the dwelling house situated upon a farm in Cleveland county, which was totally destroyed by fire. Trial was had in that court, resulting in a judgment for the defendant in error for costs. A motion for a new trial was heard and overruled by the court. Exceptions saved, and plaintiff in error brings the case here by petition in error and case made for review.

At the trial of the case the parties stipulated relative to certain facts which stipulation is as follows:

"It is hereby stipulated and agreed by and between the plaintiff and defendant that at the time of the making of the application in writing for the insurance involved in this action, and at the time of the writing of the policy, that the Deming Investment Company, plaintiff herein, had been the defendant in an action commenced by Lulu Davidson, as the next friend of the minor heirs of John Davidson, deceased, involving the land upon which the building insured by the policy involved in this case is situated, in Cleveland county, Oklahoma; that in said action the Deming Investment Company as one of the defendants, filed its answer by way of cross-petition for the foreclosure of a second real estate mortgage, upon said premises, executed by John D. Davidson and Lulu Davidson, husband and wife, in which said case Jane Lyons was one of the defendants and by answer discloses that she was the owner of a mortgage on said real estate described in said policy of insurance, by an assignment from the Deming Investment Company plaintiff herein, for the sum of one thousand dollars; that in said action the Deming Investment

Company recovered a judgment for the amount claimed by way of foreclosure of said second mortgage, and that said judgment was subject to a first mortgage of which Jane Lyons was the owner, and assigned from the Deming Investment Company; that thereafter execution was issued on the said judgment, the property was advertised by the sheriff of Cleveland county and sold subject to the mortgage of Jane Lyons, the Deming Investment Company becoming the purchaser at said sale, and that thereafter on motion of the purchaser, the Deming Investment Company, the sale was confirmed in the Deming Investment Company, and approved by ' the district court of Cleveland county; that thereafter an appeal was prosecuted in said cause to the supreme court of the Territory of Oklahoma, which said appeal was pending in the supreme court of the Territory of Oklahoma, at the time the insurance was applied for in this action, to-wit: The 22nd day of November, 1901, and at the time said policy involved in this action, was issued, on the same date. That thereafter, the supreme court of the Territory of Oklahoma, by a proper mandate dismissed the said appeal prosecuted by the said heirs of John Davidson, for the reason that the case made was not made and served within the time allowed by the court, and as prescribed by law therefor, affirming the judgment of the confirmation of the district court appealed from, which said mandate was spread upon the records of the district court of Cleveland county, after the policy of insurance was issued the plaintiff herein, and thereafter the district court of Cleveland county directed the then sheriff by proper order to make and execute to the Deming Investment Company a deed for said premises, said order being made. on the second day of December, 1901, as shown in Journal 6, page 541 and 542, which order is here referred to, and the recitals therein are agreed to and which orders are as follows, to wit:

Here follows the order of the district court of December 2nd, 1901, directing the sheriff to execute a deed to defendant in error.

November 26th, 1901, the plaintiff in error entered into a written contract with Samuel F. Sewell, in consideration of the sum of $3800.00, to sell and convey to him the land upon which the house covered by the insurance policy was situated, which contract recited the court proceedings mentioned in the stipulation hereinbefore set out, and provides that as soon as a proper judgment could be obtained in the district court in conformity to the mandate of the supreme court that would enable the plaintiff in error to procure a sheriff's deed to the land, and the court should hold that another suit then pending did not create a cloud upon its title, the plaintiff in error would immediately thereafter make and execute a warranty deed to Sewell upon payment to it within twenty days thereafter of $3800.00, less $250.00 paid, the receipt of which is acknowledged.

And it is further provided that if the plaintiff in error did not acquire and furnish to Sewell a good title to the land on or before February 1st, 1902, it would upon demand, return to Sewell the two hundred fifty dollars, with interest thereon at the rate of six per cent per annum.

' The house was totally destroyed by fire on the evening of December 4th, or morning of December 5th, 1901.

The deed was executed by the sheriff to the plaintiff in error December 7th or 8th, 1901, after the fire. A deed to Sewell was executed by plaintiff in error before the fire, but not delivered until December 30th after the fire, at which time Sewell made a further cash payment and executed a mortgage for deferred payments.

The petition in error contains five assignments of error under which the questions involved herein and argued by

counsel in their briefs are as to whether the insurance policy was invalidated:

1st. By reason of certain misstatements in the written application, signed by the insured.

The insurance policy involved was written by A. Kinkaid, who was at the time local agent for defendant at Norman, with power to solicit insurance and to receive applications therefor, and with power to write and countersign policies of insurance as such agent, subject to the approval of the defendant. That before writing the policy he was requested to get insurance on the building by Mr. Rule of Oklahoma City, agent for plaintiff. Kinkaid was at the time of writing the policy acquainted with the property to be insured, and familiar with all the conditions of the title of the plaintiff in the land; that at the time he wrote and signed the policy he prepared and wrote an application on the form used by defendant, from his personal knowledge of the facts with reference to the property, and forwarded it by mail to Mr. Rule at Oklahoma City, to be signed by him as agent for plaintiff if found correct, which when received was signed by Mr. Rule and returned to Mr. Kinkaid. Contained in the application is the following:

"18. Is the title in your own name? If other than fee simple title, what kind of a title have you? Explain fully."

"18. Property was sold under foreclosure. Court has ordered sheriff to make deed to this company. Plaintiff made appeal to supreme court which causes delay in issuing deed.

"20. Is it incumbered in any way? If so, how much and when due?

"20. The entire incumbrance is: None.

"No.

"It is understood by the applicant that the company will not be bound by any representation of the applicant, or promises of the agent not contained herein, and any subsequent incumbrance, insurance, change of ownership, occupancy, or premises becoming vacant without consent of the company, will render the policy void. Having read the foregoing application and fully understanding its contents, I warrant it to contain a full and true description and statement of the condition, situation, value, occupancy, and title of the property hereby proposed to be insured, and I warrant the answer to each of the foregoing questions to be true; and I agree that this insurance shall not be binding on said company until approved by its secretary."

That the application misstated the facts is not disputed, but it is argued by plaintiff that in view of the facts that the agent of the defendant, who wrote the policy, wrote the application, and was at the time informed as to the true condition of the title of plaintiff, that the defendant cannot now be heard to deny the validity of the policy for reason of such misstatements. Mr. Kinkaid testified that he knew of the Lyon mortgage and the condition of plaintiff's title at the time that he wrote the policy and application. It is not shown or claimed that the knowledge of Kinkaid was ever communicated to the defendant, or that it had any actual knowledge of the condition of plaintiff's title before the building was destroyed by fire, other than that contained in the application. The policy contains the following provision:

"If an application, survey, plan or description of property is taken it shall be a part of this contract and warranty by the insured."

And further provides:

"This entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material

fact or circumstance concerning this insurance or the subject thereof; or if the interest of the insured in the property be not truly stated herein."

Under the express provisions and conditions of the application and policy, the application is made a part of the contract of insurance, and the defendant warranted its answers to the questions in the application to be true, and it cannot now be permitted to say that it was ignorant of its contents, in the absence of fraud or mistake, so that unless the conduct and knowledge of defendant's agent as to the condition of the title of the plaintiff would be held to be a waiver of the stipulated warranty, then the contract of insurance is invalidated, and the plaintiff cannot recover, for it will not be disputed that a misrepresentation by an applicant for a policy of fire insurance, in his application, as to his title to the property insured, avoids the contract of insurance as to the property covered by the policy.

The case of *American Insurance Co. v. Gilbert*, 27 Mich. 429, was a case in which there was a misrepresentation in the application as to the value of the property insured.

When the insurance was applied for, the agent of the insurance company personally inspected the property and knew its true value but wrote into the application, which was signed by the applicant, the valuation in excess of the true value, and which was known by the applicant not to be a true statement of its value. We quote from the syllabus:

"An applicant for insurance cannot escape responsibility for the statement of facts which he inserts himself in the application, or permits an agent of the insurer to insert as his, upon which he is just as well informed as the agent himself, such as the condition, situation, and value of his own property

to be insured, by showing that he was induced by such agent, knowingly and against his own judgment, to state them falsely."

"In the case of *New York Life Insurance Company v. Fletcher,* 117 U. S. 519, was a case wherein a person applied in St. Louis to an agent of a New York insurance company for insurance on his life. The agent, under general instructions, questioned him on subjects material to the risk. He made answers which, if correctly written down and transmitted to the company, would have probably caused it to decline the risk. The agent, without the knowledge of the applicant, wrote down false answers, concealing the truth, which were signed by the applicant without reading and by the agent transmitted to the company, and the company thereupon assumed the risk. It was conditioned in the policy that the answers were a part of it, and that no statement to the agent not thus transmitted should be binding on his principal: *Held* that the policy was void."

The opinion of the court was delivered by Mr. Justice Field, and we quote from a portion of the opinion.

"It is conceded that the statements and representations contained in the answers as written of the assured to the questions propounded to him in his application respecting his past and present health were material to the risk to be assumed by the company and that the insurance was made upon the faith of them and upon his agreement accompanying them that, if they were false in any respect, the policy to be issued upon them should be void. It is sought to meet and overcome the force of this conceded fact by proof that he never made the statements and representations to which his name is signed; that he truthfully answered those questions; that false answers written by an agent of the company were inserted in place of those actually given, and were forwarded with the application to the home office; and it is contended that, such proof being made, the

plaintiff is not estopped from recovery. But on the assumption that the fact as to the answers was as stated, and that no further obligation rested upon the assured in connection with the policy, it is not easy to perceive how the company can be precluded from setting up their falsity, or how any rights upon the policy ever accrued to him. It is, of course not necessary to argue that the agent had no authority from the company to falsify the answers or that the assured could acquire no right by virtue of his falsified answers. Both he and the company were deceived by the fraudulent conduct of the agent. The assured was placed in the position of making false representations in order to secure a valuable contract, which upon a truthful report of his condition could not have been obtained. By them the company was imposed upon, and induced to enter into the contract. In such a case, assuming that both parties acted in good faith justice would require that the contract be cancelled and the premiums returned. As the present action is not for such cancellation, the only recovery which the plaintiff could properly have upon the facts he asserts, taken in connection with the limitation upon the powers of the agent, is for the amount of the premiums paid, and to that only would be entitled to by virtue of the statutes of the state of Missouri.

"But the case presented by the record is by no means as favorable to him as we have assumed. It was his duty to read the application he signed. He knew that upon it the policy would be issued if issued at all. It would introduce great uncertainty in all business transactions if the party making written proposals for a contract with representations to induce its execution, should be allowed to show after it had been obtained that he did not know the contents of his proposal and to enforce it notwithstanding their falsity as to matters essential to its obligation and validity. Contracts could not be made or business fairly conducted, if such a rule should prevail; and there is no reason why it should be applied merely to contracts of insurance. There is nothing in

their nature which distinguishes them in this particular from others. But here the right is asserted to prove not only that the assured did not make the statements contained in his answers, but that he never read the application, and to recover upon a contract obtained by representations admitted to be false, just as though they were true. If he had read even the printed lines of his application he would have seen that it stipulated that the rights of the company could in no respect be affected by his verbal statements, or by those of its agents, unless the same were reduced to writing and forwarded with his application to the home office. The company, like any other principal, could limit the authority of its agents, and thus bind all parties dealing with them with knowledge of the limitation. It must be presumed that he read the application, and was cognizant of the limitations therein expressed.

"In *Globe Insurance Co. v. Woolf*, 95 U. S. 327, the policy declared that the agents of the company were not authorized to waive forfeitures, and this court held that effect must be given to the provision, except so far as the subsequent acts of the company permitted it to be disregarded. In *Insurance Co. v. Norton*, 96 U. S. 240, the policy contained an express declaration that the agents of the company were not authorized to make, alter or abrogate contracts or waive forfeitures, and this court held, that the company could have insisted upon those terms had it so chosen * * * .The present case is very different from *Insurance Co. v. Wilkinson*, 13 Wall. 222, and from *Insurance Co. v. Mahone*, 21 Wall. 152. *In neither of these cases was any limitation upon the power of the agent brought to the notice of the assured.*

"Reference was made to the interested and officious zeal of insurance agents to procure contracts, and to the fact that the parties who were induced to take out policies rarely knew anything concerning the company or its officers, but relied upon the agent who had persuaded them to effect the insurance, as the full and complete representative of the company in all that is said or done in making the contract and the

court held that the powers of the agent are *prima facie* co-extensive with the business intrusted to his care, and would not be narrowed down by limitations not communicated to the person with whom he dealt. Where such agents not limited in their authority, undertake to prepare applications and take down answers, they will be deemed as acting for the companies. In such cases it may be well that the description of the risk, though nominally proceeding from the assured, should be regarded as the act of the company. Nothing in these views has any bearing upon the present case. Here the power of the agent was limited and notice of such limitation given by being embodied in the application, which the assured was required to make and sign, and which as we have stated, he must be presumed to have read. He is, therefore, bound by its statements."

In the case of the *Northern Assurance Company v. Grand View Building Association* 183 U. S. Mr. Justice Shiras, delivered the opinion of the court, and after citing from a number of New York cases uses the following language:

"It is doubtless true that in several later cases the New York court of appeals seems to have departed from the principles of the previous cases, and to have held that the restrictions inserted in the contract upon the power of an agent to waive any condition, unless done in a particular manner, cannot be deemed to apply to those conditions which relate to the inception of the contract when it appears that the agent delivered it and received the premiums *with full knowledge of the actual situation*. To take the benefit of a contract *with full knowledge of all the facts* and attempt afterwards to defeat it, when called upon to perform by asserting conditions relating to those facts, would be to claim that no contract was made, and thus operate as a fraud upon the other parties. *Robbins v. Springfield Fire Ins. Co.*, 149 N. Y. 484; *Wood v. American Fire Ins. Co.*, 149 N. Y. 382. But see *Rohrbach v. German Fire Ins. Co.*, 62 N. Y. 63: and *Owens v. Holland Ins. Co.*, which are irreconcilable.

"The fallacy of this view is disclosed in the phrases we have italicized. It was thereby assumed that the agent had full knowledge of all the facts, that such knowledge must be deemed to have been disclosed by the agent to his principal, and that, consequently, it would operate as a fraud upon the assured to plead a breach of the conditions. This mode of reasoning overlooks both the general principle that a written contract cannot be varied or defeated by parol evidence, and the express provision that no waiver shall be made by the agent except in writing on the policy. As we shall hereafter show when we come to consider the meaning and legal purport of the contract in suit, such express provision was intended to protect both parties from the dangers involved in disregarding the rule of evidence. The mischief is the same whether the condition turned upon facts existing at and before the time when the contract was made, or upon facts subsequently taking place."

There is no evidence in the record to show that Kinkaid, the local agent, either before or after he had delivered the policy and received the premium, communicated to the insurance company the true condition of the title of the plaintiff to the property insured, or that he at any time informed the company that the property insured was incumbered by mortgage in the sum of $1,000.00, or any other sum, or that the company previous to the destruction of the property by fire, had any knowledge whatever of such incumbrance.

The purpose of the application was to inform the insurance company of the facts with reference to the property sought to be insured, and to furnish it information upon which it was to act in accepting or refusing the risk; and the stipulation in the application and policy that if any of the statements made in the application were untrue, the policy should be void, was a reasonable stipulation, and if the plain-

tiff had referred to the policy issued and delivered to it, it would have found by the provisions thereof that the same was void if it concealed or misrepresented any fact or circumstance concerning the insurance or subject thereof, or if it had not stated truly its interest in the property insured, and that the policy was made and accepted subject to the stipulations and conditions therein contained, and that no agent or officer of the insurance company had power or should be deemed to have waived any of the provisions or conditions of the policy, unless such waiver should be in writing and attached to the policy.

The application after being filled out by the agent of the insurance company was forwarded to the agent of the plaintiff to be signed as such agent, if found correct. The mere fact that the answers to the questions contained in the application were written out by the agent of the insurance company did not relieve plaintiff's agent from the duty or necessity of examining the same, and to seeing to it that the statements in the application were true.

In the case of *Liverpool & L. & G. Ins. Co. v. Richardson Lumber Co.,* 11 Okla. 585, the rule is stated:

"Where the waiver relied upon is the act of an agent of the insurance company it must be shown that the agent had express authority from the company to make the waiver or that the company subsequently, with knowledge of the facts, ratified the unauthorized action of the agent."

There is no evidence to show, nor is it claimed by the plaintiff, that defendant had any knowledge of the Jane Lyons mortgage, or that the statement in the application for insurance that the property was not incumbered was false. Kinkaid was an agent, with powers strictly defined and lim-

ited by the express terms of the contract of insurance, and could not act so as to bind the defendant beyond the scope of his authority.

The question here presented is not as to whether the insurance company by either its officers or agents could waive the conditions and stipulations in its policy, but is a question as to the competency of the evidence to prove such waiver.

The contract of insurance is fully set forth in the policy, and it is expressly provided by its terms that no waiver or stipulations shall be considered except the same be in writing, and attached thereto, and that no representation of any agent shall be binding unless set forth in writing. As we understand, it is not pretended that by any language or declaration, Kinkaid, the agent at the time the policy was delivered and the premiums paid, claimed to have power to waive any provisions or conditions of the policy.

The contract was in writing, and in clear and unambiguous terms provided that the answers of the plaintiff contained in its application were warranted to be true, and that the entire policy should be void if the interest of the insured in the property were not truly stated, and that no officer, agent or other representative of the company had power to waive the provisions and conditions of the policy, except in writing, and attached to the policy; so that to hold that the conditions and stipulations in the policy had been waived by the knowledge and conduct of its agent would be to violate the well settled principles declared by the former decision of this court in the case of *Liverpool & L. & G. Ins. Co. v. Richardson Lumber Co. supra,* wherein it is held:

"A contract in writing if its terms are free from doubt and ambiguity, must be permitted to speak for itself, and cannot by the courts, at the instance of one of the parties, be altered or contradicted by parol evidence, unless in case of fraud or mutual mistake of facts, and this principle is applicable to contracts of insurance."

But it is insisted by counsel for plaintiff in error that the statements in the application for insurance in this case are not warranties, but only misrepresentations of facts which did not affect the insurance company in its action, and that the written application is not made a part of the policy, or referred to therein.

By the express terms of the policy the application is made a part of the contract of insurance, and by the terms of both the application and policy, the statements contained in the application are stipulated warranties.

The parties had a right to make their own contract upon terms and conditions in this respect as they saw fit, and if the plaintiff chose to make his representations warranties, the question of their materiality becomes unimportant, for under such stipulation, the defendant was relieved from showing, and the plaintiff was estopped from denying that they were material to the contract; and we are not permitted to say that the defendant did not deem them material to the risk, or that it would have made the contract upon other terms than it did.

The secretary of the insurance company testified that the matter of incumbrance was material, and had the company have had any knowledge of the incumbrance it would not have issued the policy.

And it may be that from experience that he may be satisfied that the matter of incumbrance upon property sought

to be insured is material to the risk, and while this materiality he may not be able to prove to the satisfaction of the court or jury, he has a right to refuse to insure property incumbered, and to insist that the statements of the applicant in his application as to such matters shall be a warranty by the insured to be true; and when, as in this case so made, it was an agreement on the part of the plaintiff not only to warrant the truth of such matters, but that they are material to the contract; and that if false, the contract shall be void; therefore all the statements and representations contained in the application, must be treated as warranties, and must be true to authorize a recovery  upon the  policy. *American Ins. Co. v. Gilbert, supra; Phoenix Life Ins. Co. v. Raddin*, 120 U. S. 183-189; *Northern Ins  Co. v. Grand View  Building Ass'n supra.*

Again the pleadings in this case contain not a word in reference to the knowledge, acts or conduct of Kinkaid, which it is contended estops the defendant from denying the validity of this policy.

The petition simply declares upon the policy of insurance, the loss by fire, and the refusal of payment.

The answer of the defendant alleges that a material condition of the contract had been broken; that the policy of insurance was issued by the defendant in the belief and upon the plaintiff's special warranty that the answers to all of said questions were true; that at the time that the application was issued and the policy written, the answers were false and that the rights of the assured under the policy had been forfeited.

The plaintiff replied by a general and special denial of the matters contained in the answer, and alleged that the loss set out in plaintiff's petition is a total loss, and that under the laws of the Territory, defendant was required to pay plaintiff by reason of said policy and said loss, the face of the policy.

Under our code, the facts relied upon as a ground of action or of defense must be clearly and concisely stated, and a definite issue presented, so that the opposite party may be fairly notified of what he is required to meet.

Under the pleadings as they exist evidence could not be received to establish the acts, conduct or knowledge of Kinkaid relied on as an estoppel.

All acts, representations and conduct, relied on as an estoppel, should be specially pleaded before evidence to establish the same can be received. *Tonkawa Milling Co v. Town of Tonkawa et al.* Opinion handed down at this sitting and cases therein cited; *The Dwelling House Ins. Co v. Johnston et al.*, 47 Kans. 1, and other cases cited.

Having reached the conclusion that under the provisions and terms of the contract of insurance sued upon, and under the pleadings, that the plaintiff cannot recover for the reasons stated, it will not be necessary to consider the other questions raised. The judgment of the district court of Cleveland county, is affirmed, with costs to plaintiff in error.

Irwin, J., who presided in the court below, not sitting; Pancoast, J., concurring except as to sec. 5 of the syllabus; all the other Justices concurring.