## UNION MUT. INS. CO. v. HUNTSBERRY.

No. 6185.   Opinion Filed March 14, 1916.

Rehearing Denied April 5, 1916.

(156 Pac. 327.)

1.   **INSURANCE—Hail Insurance Policy—Conditions Precedent to Recovery.** Section 3552, Rev. Laws 1910, provides that, whenever a policy holder sustains loss by hail, he shall have his claim for such amount as the company is liable for set off against any note which the company may hold, provided, however, that whenever a loss occurs under any policy, the assured shall give notice within five days after the hail, as a condition precedent to establishing any claim or liability. **Held,** that where this statute was in force at the time the application for insurance was made, and the policy thereunder issued, said statute entered into and became a part of the insurance contract as fully, and to the same extent, as though it had been written in the body of the contract; and **held,** further, that where the insured sustained loss by hail, he cannot maintain an action therefor, unless he has complied with the terms of said statute in regard to giving the notice provided for therein, or otherwise shows that such notice was waived by the insurance company.

2.   **INSURANCE—Waiver of Conditions—Proof—Act of Agent.** Where a waiver of conditions in an insurance policy is relied upon by the insured, he must show that the company, with knowledge of the facts that occasioned the waiver, dispensed with the ob-

servance of the condition, and where the waiver is relied on as the act of an agent, the assured must prove, by a preponderance of the evidence, either that the agent had express authority from the insurer to make the waiver, or that the insurer subsequently, with knowledge of the facts, ratified the action of the agent in making such waiver.

(Syllabus by Robberts, C.)

*Error from County Court, Payne County;*
*W. H. Wilcox, Judge.*

Action by the Union Mutual Insurance Company, a corporation, against W. H. Huntsberry. Judgment for defendant, and plaintiff brings error. Reversed.

*J. M. Grubbs,* for plaintiff in error.

*J. W. Reece,* for defendant in error.

Opinion by ROBBERTS, C. This case was commenced by the plaintiff in error, before a justice of the peace of Payne county, to recover judgment on a promissory note for the sum of $11 given by defendant to plaintiff for insurance against loss and damage to crops by hail during the season of 1911. The defendant answered: (1) Admitting the execution and delivery of the note sued on, and also another note for $18.70, given to plaintiff for the same purpose and consideration; (2) charging that the company was not authorized to carry on business in Oklahoma; (3) and alleging the execution and delivery of the note, the hail insurance contract, the hail insurance policy, the loss and damage by hail to amount of $123.70, the notice to the company, its promise to adjust, its failure to adjust or pay. The second paragraph of the answer was stricken by the court as inconsistent. The notes being admitted, the case proceeded to trial on the cross-petition of defendant, alleging loss and damage to his crops covered by the policy for which the notes were given. The

case was tried before the justice, and judgment rendered for defendant on his cross-petition for the amount claimed. The plaintiff appealed to the county court, where the case was again tried on the same issues, which resulted in verdict and judgment for the defendant on his cross-petition for $93.63 and interest. The evidence is sufficient to sustain the judgment so far as it relates to the amount of recovery, and therefore we have the single question as to whether the defendant complied with the terms of the contract in giving notice of the loss, or if notice of loss was given which did not strictly comply with the contract, was such notice waived by the plaintiff?

Section 3552, Rev. Laws 1910, which we deem sufficient here, provides:

"Whenever a policy holder sustains a loss by hail, he shall have * * * his claim for such amount as the company is liable for set off against any note of * * * which the company may hold: Provided, however, that whenever a loss occurs under any policy, the insurer shall give notice * * * within five days after the hail, as a condition precedent to establish any claim or liability."

The first proposition to be considered under this head is whether notice and waiver were sufficiently pleaded by the defendant to permit him to avail himself of that claim. The rule of pleading in justice procedure in this state is that:

"Although according to the practice in justice's courts, the defendant is not required to file an answer, if he does so, it will limit the issues as under the ordinary rules of pleading." (*Johnson v. Acme Harvesting Mach. Co.*, 24 Okla. 468, 163 Pac. 638.)

The part of defendant's answer applicable is:

"That said plaintiff had neglected to deliver said policies of insurance to this defendant until after defendant had sustained said loss, and on the 22d day of May, 1911, this defendant duly notified said plaintiff of his said loss, and said plaintiff promised to inspect and adjust the loss at once, and after this defendant had notified said plaintiff of said loss, this defendant received said two policies of insurance from plaintiff."

Although the word "waive" is not used, we are of the opinion that the language is sufficient to cover an allegation of notice or waiver, especially since no action was taken to require the defendant to make his cross-petition more definite and certain, and it will be so treated here.

Upon the question of notice of the loss, the testimony can hardly be said to be conflicting, and certainly it is not very satisfactory. The defendant, Huntsberry, testifies, in substance: That the loss or damage occurred on May 19, 1914; that he was away from home at the time; that he received his policies on the 22d day of May, just after he learned of the hailstorm; that he went to Stillwater and told a man by the name of Patrick of his loss. To establish notice of loss, or waiver thereof, counsel for defendant relies upon the following statement of facts, which we quote from his brief:

"We contend that we gave notice according to law, and, further, that the company, after it denied notice, still promised to adjust, and thereby waived all question as to notice. The proof of loss and authority of agents is from different witnesses and by circumstances. The policy was issued on May 15, 1911, the hail-storm was on May 19th, the defendant learned of his loss and gave notice on May 22d, and later on same day received his policy. The contention of the company in its brief is solely as to notice of loss.

"Agent N. B. Calder solicited the insurance and secured the application and note, and had with him E. H. Martin. Huntsberry, undisputed, testified that before receiving policy on May 22d, he, on said day, met Agent Patrick: 'A. I told him I was notified he was the agent, and that I had a loss. I wanted it to be adjusted. He told me, he said, "I'll be out and adjust it;" also wanted to hire me to drive, and we didn't make the deal. The next day he was out to my place. Q. Who came out with him? A. Mr. Smith. Q. What did Mr. Patrick tell you the next day? A. He looked at part of my crop and said, "I've just been out to Mr. Burwell's and also be at my place and adjust me." '

"Mr. Burwell, a farmer, adjoining Mr. Huntsberry, testified that this same agent, Patrick, secured his note and application for insurance in same company this spring. He further testified: 'Q. Did you have an adjustment with the Union Mutual Insurance Company on the place immediately after the hail on the 19th day of May, 1911? A. Yes, sir; after the hailstorm. Q. Was Mr. Patrick at your place? A. Yes, sir. Q. The agent? A. Yes, sir. Q. Was Mr. Patrick at your place after the hail? A. Yes, sir. Q. Who was with him? A. Mr. Smith. Q. Mr. Smith here in the courtroom? A. Yes, sir. Q. What did Mr. Patrick have to say about the losses in this vicinity? A. He said that the adjuster would be there in a few days. Q. To adjust your loss? A. Yes, sir; and Mr. Huntsberry's also; said he would adjust all the losses in the country. Now that's just the conversation we had. I asked him when this adjuster was coming, and he said he didn't know just what day, but he would be there right away. Q. After this man Patrick was at your place who came next in reference to your loss? A. Mr. Taylor. Q. Did he adjust your loss on behalf of the Union Mutual? A. Yes, sir. Q. After he had adjusted your loss, did you receive some communications from the Union Mutual Company through the mail? A. Yes, sir; I got this here letter. Q. The note with the let-

ter? A. Yes, sir. Q. What did this adjuster tell you as to losses within the vicinity, Mr. Taylor? A. What did he comment about the losses? Q. Yes. A. He asked me about who had losses, and I told him that I heard Mr. Huntsberry had a loss; he said he was going right down to Huntsberry's place from my place. Q. You know whether he did go? A. No, sir; don't think he did. Q. How many days—what time was it the adjuster was there? A. I've forgotten the date, now, he was there. Q. He say whether he adjusted Huntsberry's loss? A. He said he was going from my place down there. Q. To adjust it? A. Yes, sir. Q. Was he ever there after that at your place that you saw him? A. No, sir; not after that.

"As shown by Huntsberry and Smith, it was the next day after Huntsberry had notified Patrick that Patrick looked over crop and promised Mr. Huntsberry adjustment; also had his talk with Burwell. This would make Patrick at Huntsberry farm and Burwell farm on May 23d, or fourth day after hail, which was the 19th. Burwell further testified that Patrick told him when there with Smith that the adjuster would be there to adjust his loss and Huntsberry's and all losses in the country. This was on same trip, May 23d, and it is fair to say that Patrick had notified company as to both Burwell and Huntsberry's losses. Not only do we have the testimony of Mr. Burwell that Patrick wrote him and took his note, but after Taylor adjusted loss, the company still recognized Patrick and Taylor as agents, and returned by mail from Enid the note to Mr. Burwell. This note has name of Patrick on same as witnessing agent, and was Burwell's insurance note. Burwell's loss was adjusted by Taylor at $67.50, and note amounted to $60, but the check was never inclosed, and Burwell never paid. Patrick was not a local agent, but was out from the home office at Enid. (The man Smith above referred to was the driver with Patrick.)

"J. E. Smith, president of the company, testifies: 'No, sir; no one had authority to adjust losses or accept notice except people sent out from home office.' Mr. Burwell gave notice of his loss by phone. 'Q. Who was at the company's office that received the phone message? A. Mr. Taylor. Q. The fellow that afterwards adjusted? A. Yes, sir.'

"So it is clear that Patrick had notice, on May 22d, and had notified his company by May 23d. It is not clear as to the day Adjuster Taylor told Burwell he was going over to adjust Huntsberry. Adjuster Taylor promised to adjust Mr. Huntsberry's loss, but failed to do so. J. E. Smith, president, also promised to adjust."

The last statement of counsel, that J. E. Smith, president of the company, promised to adjust the loss, is evidently based upon his own testimony, in which he relates a conversation over the phone with Smith about the 7th of November, 1914, which was more than five months after the loss. Smith denies the testimony of Mr. Reece, in that particular, not only on the witness stand, but in a letter to Reece, dated November 9, 1914. In his testimony Smith testified that he was president of the company, and swears positively that "the company never received any notice of any loss sustained by defendant under the policy written in 1911," and that the first knowledge the company had of this loss was in September. In regard to the authority and agency of Patrick and Calder, he testified, in part, as follows:

"Q. I will ask you to state what connection, if any, this man Patrick had with your company at that time? A. Mr. Patrick was probably a subagent under Mr. N. B. Calder. Q. Was Mr. Patrick employed by you to represent the company in any capacity by you or any other representative of the company at the head office? A. He was not. Q. Who was Mr. Calder? A. He was an agent

employed by the Union Mutual Insurance Company to so-
licit business, applications, and premiums.   Q.   What
was the extent of his authority to bind the company?   A.
Just in the way of taking applications and notes and so-
liciting insurance.   Q.   Did he have any authority to ad-
just losses or accept notice of losses in behalf of the
company?   A.   He did not.   Q.   What authority did he
have to appoint subagents to assist him in his work.   A.
He had authority to appoint agents to solicit applications
and premiums.   Q.   Could any of his subagents accept
notice of losses or adjust the same?   A.   No, sir; no one
had authority to adjust losses or accept notice except peo-
ple sent out from the home office."

The entire record fully corroborates and sustains the
testimony of President Smith, and from it we are forced
to the conclusion that:   (1) Patrick was not the agent
of the company; (2) that notice to him was not notice
to the company; (3) that he had no authority, and could
not waive notice of the loss and damage claimed by the
defendant; (4) and, finally, that no notice of the loss and
damage was ever served on the company within the time,
nor as required by the statute above set out, which statute
entered into and became a part of the policy contract,
nor was such notice waived.

In the case of *L. L. & G. Ins. Co. v. Richardson Lbr.
Co.*, 11 Okla. 585, 69 Pac. 938, the Supreme Court of the
territory sanctions the following rule and doctrine:

"Where the act and conduct of an agent of the insur-
ance company is relied on as a waiver of a stipulation or
condition contained in a policy of fire insurance, it must
be shown that the agent had express authority from the
company to make the waiver, or that the company subse-
quently, with knowledge of the facts, ratified the unau-
thorized action of the agent."

That case is cited with approval in *Deming Inv. Co. v. Shawnee Fire Ins. Co.*, 16 Okla. 1, 83 Pac. 918, 4 L. R. A. (N. S.) 607.   In *Gish v. Ins. Co. of N. A.*, 16 Okla. 59, 87 Pac. 869, 13 L. R. A. (N. S.) 826, the court says:

"Where a waiver of the conditions in a fire ·insurance policy is relied upon by the insured, he must show that the insurer, with knowledge of the facts that occasioned the forfeiture, dispensed with the observance of the condition.   Where the waiver relied on is the act of an agent, it must be shown either that the agent had express authority from the insurer to make the waiver, or that the insurer subsequently, with knowledge of the facts, ratified the action of the agent."

On the question of the right to maintain the action without giving the notice, as provided in section 3552, *supra,* which provides that under hail insurance policies, "whenever a ·loss occurs under any policy, the insured shall give notice of loss within five days after hail, as a condition precedent to establish any claim or liability," this court, in *Com. Un. Assur. Co. v. Shults,* 37 Okla. 95, 130 Pac. 572, says:

"Where a fire insurance policy contains the provision that in case of loss by fire, the insured shall give notice of such loss and shall, within 60 days, make verified proof of loss in writing, and where the policy makes a compliance with such provision a condition precedent to an action, held, the right of action does not mature until such provision has been complied with or waived; and, where under all the proof it appears that such provision has neither been complied with nor waived, the insured cannot recover."

The burden was on the defendant to prove that he gave the notice of loss required under the statute, *supra,*

or failing so to do, that the plaintiff waived such notice. There is no competent evidence whatever tending to prove either fact, and therefore the judgment should be reversed.

By the Court: It is so ordered.